IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DEREK A. HEYLIGER,

                             Plaintiff,              Civil Action No.
                                                 9:17-CV-0912 (DNH/DEP)

     v.

A. CYMBRAK, *et al.*

                             Defendants.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

DEREK A. HEYLIGER, *Pro se*
12-B-0269
Attica Correctional Facility
Box 149
Attica, NY 14011

FOR DEFENDANTS:

HON. BARBARA D. UNDERWOOD        WILLIAM A. SCOTT, ESQ.
New York State Attorney General       Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMENNDATION</u>

Plaintiff Derek A. Heyliger, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against several employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), as well as Catherine Leahy Scott, the New York State Inspector General. In his ninety-seven page prolix complaint, plaintiff alleges, *inter alia*, that defendant Scott violated his rights arising under the Eighth Amendment by failing to protect him from excessive force, as well as his rights under the First Amendment by arranging for his transfer between prison facilities in retaliation for lodging grievances and complaints.

Currently pending before the court is a motion brought by defendant Scott in which she seeks dismissal of plaintiff's claims against her based principally on her lack of personal involvement. For the reasons set forth below, I recommend that Scott's motion be denied.

I.     BACKGROUND[1]

Plaintiff is currently an inmate being held in the custody of the

DOCCS. *See generally* Dkt. No. 1. Although he is now confined

elsewhere, at the times relevant to his claims and the present motion,

plaintiff was confined to the Clinton Correctional Facility ("Clinton") or the

Auburn Correctional Facility ("Auburn"). *Id.*

This action represents the third lawsuit initiated by plaintiff growing

out of an alleged December 6, 2013 assault by a fellow inmate while the

two were confined at Clinton. Dkt. No. 1 at 22-23; *see Heyliger v.*

*Trombley, et. al.*, No. 9:16-CV-0980 (N.D.N.Y., filed 08/05/2016) ("*Heyliger*

*II*"); *Heyliger v. Gumlaw, et. al.*, No. 9:14-CV-0603 (N.D.N.Y, filed

3/13/2014) ("*Heyliger I*"). While plaintiff's complaint is disjointed and

difficult to follow at certain points, he alludes to having been assaulted by

correction officers following the altercation with the fellow inmate.[2] *See,*

---

[1]     Considering the procedural posture of this case, the following recitation is drawn
principally from plaintiff's complaint, the contents of which have been accepted as true
for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007)
("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of
the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

[2]     While it is far from clear from the face of the complaint, I note that in *Heyliger I*,
plaintiff alleged that several corrections officers were required to use force against him
to restore prison order in the aftermath of the December 6, 2013 altercation. *Heyliger I*,
Dkt. No. 1 at 46. When plaintiff thereafter refused to cooperate with the officers'
subsequent investigation of the incident, he was allegedly assaulted by those officers.
*Id.* at 46-49.

*e.g.*, Dkt. No. 1 at 21 (alleging that plaintiff "informed his hearing officer of the prior assault inflicted" by corrections officers). As a result of his role in the altercation, plaintiff was deemed to have engaged in "unsuitable behavior," a finding that resulted in him being transferred from Clinton to Auburn on March 20, 2014. *Id.* at s22.

In addition to commencing *Heyliger I* in this court, at some unknown point, plaintiff also filed several grievances in connection with the December 2013 altercation, the corrections officers' use of force, and his subsequent assault. *See, e.g.*, Dkt. No. 1 at 19, 21. Plaintiff was informed between May 2014 and July 2014 that his grievances were denied, a fact that he attributes as coming from, among others, defendant Scott. Dkt. No. 1 at 22-23.

On September 9, 2015, plaintiff "reported the December 6, 2013 assault" to the New York State Police and asked to "fil[e] criminal charges" against the responsible corrections officers. Dkt. No. 1 at 23. In response, plaintiff received a letter indicating that his inquiry had been "forwarded . . . to the [New York State] Inspector General's Office, as the matter would come under [its] jurisdiction."[3] *Id.*

According to plaintiff, defendant Scott then "approved and

---

[3]    In a parenthetical to that allegation, plaintiff states "[d]efendant Scott[']s attention," suggesting his belief that his September 9, 2015 report was forwarded to her by the New York State Police. Dkt. No. 1 at 24.

authorized" his transfer back to Clinton on September 11, 2015, despite

defendant Scott having been made aware that plaintiff faced a serious risk

of "retaliatory assault" by the corrections officers stationed at that facility.

*Id.* at 24.

Following his transfer back into Clinton, plaintiff expressed fear

regarding his risk of being assaulted by staff at the facility. Dkt. No. 1 at

25. He alleges that despite registering those concerns, on October 28,

2015 he was assaulted by corrections officers whom he also names as

defendants in this action. *Id.* at 31-33.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on August 18, 2017, by the filing of a

complaint accompanied by an application for leave to proceed *in forma*

*pauperis* ("IFP"). Dkt. Nos. 1, 2. Because his IFP application was not

properly certified, the case was closed administratively pending

submission by plaintiff of a complete application for leave to proceed to

IFP. Dkt. Nos. 4, 5.

Upon receipt of plaintiff's revised IFP application, District Judge

David N. Hurd issued an order on November 15, 2017, in which he

granted plaintiff IFP status, and dismissed fifteen defendants from the

action as well as a number of claims set forth in the complaint. Dkt. No. 7.

As it pertains to this motion, and more specifically to defendant Catherine

Leahy Scott, Judge Hurd limited plaintiff's claims against her to an Eighth Amendment failure-to-protect claim and a First Amendment retaliation cause of action. *See generally id.*

On July 2, 2018, in lieu of answering, defendant Scott filed a motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that as the New York State Inspector General ("IG"), she played no role in the processing of plaintiff's inmate grievances or his transfer back to Clinton. Dkt. No. 29-1 at 8. Defendant Scott further argues that the alleged failure to investigate plaintiff's allegations of abuse is insufficient to support a constitutional violation. *Id.* at 9. By letter dated July 10, 2018, plaintiff indicated that he did not intend to file a response to defendant Scott's motion. Dkt. No. 33.

Defendant Scott's motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Plaintiff's Failure to Oppose Defendants' Motion

As was noted above, plaintiff has chosen not to file a submission in opposition to defendant Scott's motion. Dkt. No. 33. Before turning to the merits of defendant Scott's motion, the court must first consider the legal

significance, if any, of this failure, and specifically whether it automatically entitles defendant Scott to an order dismissing plaintiff's claims against her.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3). Undeniably, *pro se* plaintiffs are entitled to some measure of forbearance when defending against summary judgment motions. *See Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.). The deference owed to *pro se* litigants, however, does not extend to relieving them of the ramifications associated with Local Rule 7.1(b)(3). *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J., *adopting report and recommendation by* Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J., *adopting report and recommendation by* Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp.106, 106-07 (N.D.N.Y. 1997) (Pooler, J., *adopting report and recommendation by* Hurd, M.J.).[4] Accordingly, absent a showing of good

---

[4]     Copies of all unreported decisions cited in this document have been appended

cause, defendant Scott's unopposed dismissal motion should be granted, if determined to be facially meritorious. *See Allen v. Comprehensive Analytical Group, Inc*., 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

   B.   Legal Standard Governing Motions to Dismiss

   A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief. ' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

---

for the convenience of the *pro se* plaintiff.

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. ' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible. ' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining

whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94

(" '[A] *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers. ' " (quoting

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a

plaintiff proceeds *pro se*, a court is obliged to construe his pleadings

liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r*

*of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y.

2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

C.    Analysis

Defendant Scott contends that although New York Executive Law §

53(1) empowers the Office of the New York State Inspector General to,

*inter alia*, investigate "allegations of corruption, fraud, criminal activity,

conflicts of interest or abuse" within DOCCS, as the IG, she lacks the

appropriate authority to transfer inmates, a matter that is entrusted solely

to the DOCCS. Dkt. No. 29-1 at 7-8. She argues that because of this lack

of authority, she cannot possibly have played a role in plaintiff's

constitutional deprivations because they are predicated, in part, upon his

transfer back into Clinton.[5] *Id.*

---

[5]      Defendant Scott additionally argues that an alleged failure to investigate
represents an insufficient basis for a claim. Dkt. No. 29-1 at 9. On this point, I agree.
There is no constitutional right to an investigation by government officials into

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under section 1983. *See Ashcroft*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

---

complaints lodged by inmates. *Guillory v. Scott*, No. 14-CV-0971, 2014 WL 11173632, at *6 (N.D.N.Y. Dec. 2, 2014) (D'Agostino, J.); *see also Renelique v. Duncan*, No. 03-CV-1256, 2007 WL 1110913, at *14 (N.D.N.Y. Apr.12, 2007) (dismissing inmate's claim that Inspector General failed to investigate an alleged assault upon receipt of inmate's letter complaint, finding that the "allegations fail to state a cause of action because [the inmate] has no constitutional right to an investigation, and he has failed to establish the personal involvement of the Inspector General"); *see also Brown v. Pritchard*, No. 09-CV-214, 2011 WL 4439092, at *6-7 (W.D.N.Y. Sept. 23, 2011). However, plaintiff does not allege, for example, that he wrote to defendant Scott and that she refused to conduct an investigation; instead, he contends that she was directly involved in his First and Eighth Amendment constitutional deprivations.

The thrust of defendant Scott's argument is that because the constitutional claims against her are grounded in plaintiff's transfer back to Clinton, she cannot be held responsible because her office lacks the final authority to transfer inmates confined to the custody of the DOCCS. Rather, that authority to transfer inmates among facilities is vested solely with the DOCCS's Office of Classification and Movement ("OCM"). *See, e.g.*, DOCCS Directive No. 4017 (dated 07/09/2013).

The glaring flaw this argument, however, is in defendant Scott's underlying assumption that only those persons vested with the final authority to order a facility transfer are proper defendants pursuant to 42 U.S.C. § 1983, and that she could not have played a role in the decision. The Second Circuit has recognized the possibility that someone other than the person with final transfer authority over inmates could be considered to be personally involved in a transfer decision, despite the ultimate determination being vested with the OCM.[6] *See, e.g.*, *Davis v. Kelly*, 160

---

[6]    Although defendant Scott has not raised any argument with respect to her role as a supervisor, I note that the Second Circuit has likewise cautioned against the premature dismissal of "supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability[.]" *Davis*, 160 F.3d at 921 (collecting cases); *see also Satchell v. Dilworth*, 745 F.2d 781, 786 (2d Cir. 1984) ("Plaintiff should have a reasonable opportunity, through discovery [of senior personnel], to ascertain what individuals ... caused [the alleged violation]."). "After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case[.]" *Davis*, 160 F.3d at 921-22 (citing *Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997*); Wright v. Smith*, 21 F.3d 496, 501-02 (2d Cir. 1994).

F.3d 917, 920-21 (2d Cir. 1998); *see also Campbell v. Kuhlmann*, No. 91-CV-6766, 1998 WL 249196, at *4 (S.D.N.Y. May 15, 1998) (rejecting an argument that liability pursuant to section 1983 is restricted "to the person *who orders* the transfer." (emphasis in original)).

In *Smith v. Levine*, 510 F. App'x 17 (2d Cir. 2013), the Second Circuit concluded that the district court erred when it determined that the plaintiff's complaint "gave 'no indication' that either [of the defendants] had any personal involvement in the [inmate] transfer," and granting defendants' pre-answer motion to dismiss. *Id.* at 20. In reversing the lower court's decision, the Second Circuit noted that although the complaint did "not contain the specificity desired in all contexts, given the 'special solicitude' accorded to pro se complaints," dismissal was premature because the plaintiff's allegations were sufficient to " 'suggest' " the defendants' direct involvement in the inmate's transfer. *Id.*

In this case, plaintiff alleges that he filed several grievances in connection with the December 6, 2013 assault, as well as events that transpired between him and corrections officers in its aftermath. Dkt. No. 1, at 19, 21. As unlikely as it may seem that defendant Scott, the IG for the State of New York, played any role in the events giving rise to plaintiff's claims, plaintiff has alleged in his complaint that she was among the individuals who denied his grievances and orchestrated his transfer to

Clinton in September 2015. Dkt. No. 1 at 22-24. These are allegations that must be accepted as true for purposes of the pending motion.

I note, moreover, that "[o]n September 9, 2015[,], plaintiff reported the December 6, 2013 assault by [corrections] officers . . . to the New York State Police" so that he could initiate the filing of criminal charges against the responsible officers. Dkt. No. 1 at 23. In response, the New York State Police indicated that his complaint was forwarded " ' to the [New York State] Inspector General's Office, as the matter would come under [its] jurisdiction,' (Defendant Scott[']s attention)." *Id.* at 23-24. Plaintiff then alleges that he was transferred into Clinton on September 11, 2015. *Id.* at 24. A plausible inference to be drawn from this alleged sequence of these events is that plaintiff's grievances and his complaint to the New York State Police were the precursors for his transfer back to Clinton.

Mindful that the remaining allegations against defendant Scott have already survived Judge Hurd's initial review pursuant to 28 U.S.C. §§ 1915(e), 1915A, *see generally* Dkt. No. 7, and given the "special solicitude" that is accorded to *pro se* complaints, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006), I conclude that plaintiff's allegations are sufficient at this stage to suggest that defendant Scott, through her alleged denial of plaintiff's grievances or her receipt of plaintiff's September 9, 2015 complaint to the police, was personally

involved in plaintiff's transfer back to Clinton. Much like the Second Circuit in *Smith*, I note that "the language in the . . . complaint barely makes out sufficient accusations regarding" defendant Scott's personal involvement. *Smith*, 510 F. App'x at 20. As a result, I doubt that plaintiff's "sparse descriptions of [defendant Scott's] participation [in the transfer] will result, on further discovery, in a viable claim." *Id*. However, at this stage of the proceedings, any resolution of defendant Scott's involvement would be premature. Accordingly, I conclude that her motion must be denied.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's allegations against defendant Scott have already survived initial review pursuant to 28 U.S.C. §§ 1915(e), 1915A and, given the "special solicitude" that is given to plaintiff as a *pro se* litigant, I conclude that his allegations plausibly suggest that defendant Scott was personally involved the conduct giving rise to plaintiff's First and Eighth Amendment claims. Accordingly, it is hereby respectfully

RECOMMENDED that defendant Catherine Leahy Scott's motion to dismiss plaintiff's claims against her (Dkt No. 29) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this

report.[7]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:       December 20, 2018
             Syracuse, New York

---

[7]        If you are proceeding *pro se* and are served with this report and
recommendation by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If
the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then
the deadline is extended until the end of the next day that is not a Saturday, Sunday, or
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2011 WL 4439092
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Antonio BROWN, Plaintiff,

v.

Officer PRITCHARD, et al., Defendants.

No. 09CV214S.
|
Sept. 23, 2011.

**Attorneys and Law Firms**

Antonio Brown, Comstock, NY, pro se.

Kim S. Murphy, NYS Attorney General's Office, Buffalo, NY, for Defendants.

### Order

HUGH B. SCOTT, United States Magistrate Judge.

**\*1** Before the Court is the *pro se* plaintiff's motion to reconsider denial of leave to amend his Complaint a third time (Docket No. 135). This motion arises from his third (*cf.* Docket Nos. 17, 108) motion for leave to amend the Complaint to add new defendants (Docket No. 116), now certain officials (known and unknown) in the New York State Department of Correctional Services' office of Inspector General. This Court denied leave (Docket No. 129), *see Brown v. Pritchard,* No. 09CV214, 2011 U.S. Dist. LEXIS 72486, 2011 WL 2651806 (W.D.N.Y. July 6, 2011) (Scott, Mag. J.), and plaintiff filed his motion to reconsider (Docket No. 135). Responses to this motion were due by August 22, 2011 (Docket No. 136), which defendants timely submitted (Docket No. 139). Plaintiff requested extensions of time to reply (Docket No. 142, 145), which eventually was due by October 3, 2011. Plaintiff submitted his reply (Docket No. 150) and the motion was deemed submitted as of September 22, 2011, when plaintiff replied. Familiarity with the prior Orders and Reports and Recommendations in this case (as cited below [1] ) is presumed.

### BACKGROUND

This is a civil rights action commenced by an inmate, alleging that defendant corrections officer Pritchard used excessive force against him during a pat down frisk conducted on May 4, 2008, at the Attica Correctional Facility ("Attica") (Docket No. 1, Compl.). Plaintiff then filed a grievance against Officer Pritchard. On June 3, 2008, Pritchard allegedly denied plaintiff access to the showers. Plaintiff complained about this to defendant Sergeant Marinaccio, but the sergeant ignored the complaint, instead telling Pritchard about it. Plaintiff then alleges that Pritchard and defendants Officers Swack, Schuessler, and Sergeant Hodge were waiting for plaintiff in his cell where he was pat frisked, smacked in the head and asked by Pritchard whether plaintiff liked making complaints. The officers then allegedly assaulted, kicked, and punched the prone plaintiff. (*Id.* at 3–4.) Plaintiff filed another grievance from the June 3 incident (*id.* at 4). Plaintiff claims that Pritchard made the grievance from the May 4 incident "disappear" but it was later found as filed (*id.* at 4–5). Plaintiff then was placed in the Special Housing Unit for nine months (*id.* at 5). Plaintiff alleges "abusive" use of force and retaliation in violation of his First, Eighth, and Fourteenth Amendments rights (*id.* at 5–6).

Plaintiff then amended this Complaint to allege claims against Department of Correctional Services ("DOCS") Commissioner Brian Fischer and Attica Superintendent James Conway (Docket No. 17). The new claim alleges that Pritchard was feared by inmates and civilians and was well known for abusing inmates (including raping inmates and stealing from them) (*id.* ¶ 20; *see* Docket No. 19, Pl. Motion ¶ 3). Plaintiff contends that Fischer and Conway knew about Pritchard and nevertheless allowed him to work at Attica Correctional Facility in deliberate disregard for the safety of inmates (Docket No. 17, Am. Compl. ¶ 21), including plaintiff. This motion was granted (Docket No. 20).

**\*2** After an initial round of discovery, including discovery related to a then-pending defense summary judgment motion by defendants Conway and Fischer (*see also* Docket Nos. 81 (motion), 97 (Report & Recommendation recommending denying motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d)), plaintiff moved to add "S. Khaharf"

as a defendant, alleging that he had supervisory liability as acting Superintendent at the time several grievances were lodged against Pritchard (Docket No. 108). In response, defendants corrected the name of the proposed defendant (Sibatu Khahifa), and stated that they have no objection to plaintiff amending the Complaint to assert claims against "Sibatu Khahifa," but reserving the right to move dismiss this claim at a later time" (Docket No. 119, letter of Assistant Attorney General Kim Murphy to Chambers, May 3, 2011, filed by Court May 26, 2011). Absent objection from defendants, this motion was granted (Docket No. 117) and plaintiff timely filed his second Amended Complaint (Docket No. 120)[2].

Plaintiff then sought to add five DOCS employees and officials from the office of Inspector General as new defendants (Docket No. 116), collectively herein the "Inspector General defendants."

The proposed third Amended Complaint alleges that "for decades, correction officers have been accused of abusing prisoners" (Docket No. 126, Proposed [Third] Amend. Compl. ¶ 18) and are allowed to do so because supervisors were "not reprehending [sic] the officer who are abusing the prisoners" (*id.*). Plaintiff alleges that "every time an officer is accused of abusing a prisoner, the officer only [has, sic] to deny the accusations, then the investigation always determines that the officer did not abuse the prisoner" (*id.* ¶ 19), despite the number of accusations of various wrongs corrections officers may have committed against an inmate (*id.* ¶ 20). He contends that the new Inspector General defendants received many complaints of abuse by officers Pritchard, Swack, and Schuessler but none of them have been "reprehended" [sic] so as to prevent future incidents (*id.* ¶ 21). He then repeats the allegations of the 2008 incidents involving him (*id.* ¶¶ 22–31, 15–17), but not alleging any connection between the inaction of the Inspector General defendants and these 2008 incidents. Plaintiff, for the first time, asserts previous complaints against some of the corrections officers other than Pritchard, but without the specificity asserted against Pritchard.

Separately, defendants moved for a Protective Order regarding production of documents from the Inspector General's office (Docket No. 106) and that motion was granted in relevant part, with interrogatories posed rather than the document production sought by plaintiff (Docket No. 128[3]). Plaintiff then moved to compel discovery

of certain grievances, this time involving defendants other than Pritchard (Docket No. 122) and then sought discovery sanctions (Docket No. 140); these motions are pending.

**\*3** Plaintiff's motion for leave to amend this time was based, in part, upon information he learned from defendants' motion for a Protective Order (*see* Docket No. 116). Plaintiff claims that the admissions made by defendant Fischer and his subordinates identify

> "others who are responsible for addressing complaints that are filed against corrections officers. There appears to be a coordinated effort by employees of the New York State Department of Correctional Services to be deliberately indifferent to inmates' complaints that are filed against officer Pritchard (and very likely other officers). Plaintiff is claiming that additional defendants were made aware of the long time abuse that was committed against inmates by officer Pritchard; however, the defendants failed to do anything to prevent officer Pritchard from abusing other inmates."

(Docket No. 116, Pl. Motion ¶ 4.)

As explained in the Order granting defendants a Protective Order against producing Inspector General complaints and grievances from other inmates against Pritchard (Docket No. 128, Order at 5), the Inspector General investigates **allegations** of violations of DOCS's rules and regulations, employee rules, and violations of New York Penal Law by inmates and employees, referring **substantiated** incidents for review and possible disciplinary action and/or criminal prosecution (Docket No. 106, Fonda Decl. ¶ 4, emphasis added). Substantiated instances of employee misconduct are referred to the DOCS's Bureau of Labor Relations for consideration of administrative disciplinary action;[4] potential violations of criminal law by either employees or inmates would be referred to the District Attorney and to Labor Relations

Brown v. Pritchard, Not Reported in F.Supp.2d (2011)
Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 19 of 58
2011 WL 4439092

(for employees) for further action (*id.*). No action is taken upon unsubstantiated grievances (*see id.* ¶ 3).

Defendants opposed plaintiff's latest amendment, arguing that plaintiff does not allege that these new Inspector General defendants had a duty to protect plaintiff from excessive force used by defendant Pritchard (Docket No. 121, Defs. Atty. Decl. ¶ 6). Noting that plaintiff had not filed a proposed third Amended Complaint when they responded to this motion, defendants assumed that plaintiff was claiming that the Inspector General defendants "had personal involvement in the alleged excessive force by defendant Pritchard merely because they supervised or investigated other claims against defendant Pritchard in their capacities as employees of the DOCS Inspector General's and Labor Relations Offices" (*id.* ¶ 5). Defendants conclude that the latest amendment would be futile (*id.* ¶ 6).

In his reply, plaintiff, after noting that he filed the proposed amendment (*see* Docket No. 126), reasserts that he clearly stated his claim in his motion for leave to amend (Docket No. 127, Pl. Reply at 1), namely that the new defendants are involved in a "coordinated effort" by DOCS employees to be deliberately indifferent to inmates' complaints filed against Officer Pritchard and others, that the new defendants were aware of the "long time abuse that was committed against inmates by officer Pritchard; however, the defendants failed to do anything to prevent officer Pritchard from abusing other inmates" (Docket No. 116, Pl. Motion ¶ 4; Docket No. 127, Pl. Reply at 1). Whenever allegations are made against Pritchard, plaintiff alleges that the new defendants "always declare that the officer never committed abuse." Plaintiff thus questions the validity of the process of these potential defendants declaring every grievance filed against Pritchard as being unsubstantiated. (Docket No. 127, Pl. Reply at 1–2.) By allowing the accused Pritchard (and presumably other correctional defendants) to continue to work in the same housing unit despite the accusations against them, plaintiff concludes that the Inspector General defendants deliberately acted to ignore Pritchard's abuse (*id.* at 2).

**\*4** This Court denied leave (Docket No. 129), finding that these five new defendants did not owe plaintiff a duty to him from their action (or inaction) regarding grievances filed with them regarding defendants Pritchard and the other corrections officers (*id.* at 9–12).

*Plaintiff's Motion for Reconsideration*
In seeking reconsideration, plaintiff argues that there have been numerous civil rights complaints filed against Pritchard and he alleges that the Inspector General defendants failed to act upon over 40 grievances filed with them (that plaintiff is aware of) against Pritchard. He contends that the Inspector General defendants are "systematically protecting abusive officers." (Docket No. 135, Pl. Motion to Reconsider at 1.) He alleges that Pritchard and other officers abused "many, many prisoners" and officials in DOCS are indifferent to prisoner abuse (*id.* at 2–3). From the number of grievances filed (including those no longer retained by DOCS) against Pritchard, plaintiff concludes that Pritchard had abused inmates, despite the finding that these grievances were not substantiated, concluding that DOCS officials have been lying and covering up Pritchard's (and other officers') misconduct (*see id.* at 3–6).

Defendants respond that plaintiff's sole argument for reconsideration is that this Court erred in applying the law regarding amendment of pleadings and that this was not a sufficient basis for reconsideration (Docket No. 139, Defs. Atty. Decl. ¶ 6). They conclude that plaintiff merely reargues points he did not succeed with in his motion (*id.* ¶ 7).

In reply, plaintiff urges reconsideration because the issue of whether or not the prior allegations of inmate abuse lodged against Pritchard (and received by the potential defendants) is an issue of fact not to be decided on a motion for leave to amend pleadings (Docket No. 150, Pl. Reply at 3). He cites to a case, *Danley v. Allen*, 540 F.3d 1298 (11th Cir.2008); *see id.* at 1315, stating that supervisors may be held liable for excessive force and deliberate indifference under § 1983 if the supervisors were on at least constructive notice of the wrongful activities of their subordinates from prior misconduct reports (*id*, at 4).

## DISCUSSION

### I. Applicable Standard

#### A. Reconsideration
Pertinent to this case, the basis for reconsideration is Federal Rule of Civil Procedure 60, whether there was a clerical mistake or a mistake arising from oversight or omission, Fed.R.Civ.P. 60(a), or a mistake,

newly discovered evidence, fraud, misrepresentation, or misconduct of opposing party, or any other reason that justifies relief, *id.* R. 60(b)(1), (2), (3), (6). No clerical error, newly discovered evidence, fraud, or opponent misconduct were asserted here; so the basis for reconsideration is a mistake.

### B. Leave to Amend the Complaint and *Pro se* Plaintiffs

As previously stated (Docket No. 129, Order of July 6, 2011, at 7; Docket No. 117, Order of May 13, 2011, at 3–4; *see also* Docket No. 20, Order of Nov. 6, 2009, at 3–4), under Federal Rule of Civil Procedure 15(a)(2), amendment of pleadings after the time to do so as of right requires either written consent of all parties (clearly not present here) or by leave of the Court. Motions for leave to amend the Complaint are to be freely given when justice requires. Granting such leave is within the sound discretion of the Court. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). "In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment,* etc.-the leave sought should, as the rules require, be 'freely given,' " *Foman, supra,* 371 U.S. at 182 (quoting Fed.R.Civ.P. 15(a)) (emphasis added).

**\*5** If a plaintiff is proceeding (as here) *pro se,* leave to amend should be freely granted, *Frazier v. Coughlin,* 850 F.2d 129, 130 (2d Cir.1988) (*pro se* should be freely afforded opportunity to amend). In general, the pleading of a *pro se* plaintiff, is to be liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'D " *Bell Atlantic Corp. v. Twombly,* [550 U.S. 544, 555] (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp., supra,* at [550 U.S. at 555–56, —— S.Ct. at ——— ———] (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974))."

*Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). In *Erickson,* the Court held that the Tenth Circuit departed from the liberal pleading standards of Rule 8(a)(2) by dismissing a *pro se* inmate's claims.

"The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is 'to be liberally construed,' [*Estelle v. Gamble,* 429 U.S., 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,' *ibid.* (internal quotation marks omitted). *Cf.* Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

551 U.S. at 94; *see Boykin v. Keycorp,* 521 F.3d 202, 213– 14 (2d Cir.2008). Thus, the *pro se* plaintiff's Complaint has to be construed "more liberally" than one filed by counsel, *Boykin, supra,* 521 F.3d at 214, presumably his amended pleading also has to be so liberally construed.

### II. Application

There is no basis to reconsider the earlier decision denying leave to amend the Complaint to add these five new parties. This Court considered plaintiff's arguments in his reconsideration motion and they argue for Pritchard's liability and potentially the liability of his superiors. These arguments do not implicate the Inspector General defendants, who (at worse) failed to agree with the complaining inmates that Pritchard (and other charged corrections officers) committed the acts alleged. Even in this motion to reconsider, plaintiff fails to assert the causal link between the Inspector General defendants' inaction (or action contrary to plaintiff's ultimate position) and plaintiff's alleged injuries at the hands of Pritchard and the other officer defendants.

**\*6** The amendment here seeks to add five DOCS officials and employees as defendants and charging them with liability due to their respective roles in reviewing grievances lodged against defendant Pritchard by other, non-party inmates (Docket No. 116, Pl. Aff. ¶¶ 2–4) for alleged incidents that occurred before plaintiff's encounters with Pritchard in the spring of 2008. Apparently, he contends that, had these defendants acted appropriately against Pritchard (or the other corrections officers) when accused in earlier incidents involving other inmates, plaintiff would not have been harmed by Pritchard (or the other officer defendants), even if they were accused in incidents found to be unsubstantiated. Plaintiff wishes to allege supervisory liability on mere accusation by third parties. The futility of this amendment arises because it is unclear that these potential defendants could be found liable merely upon their actions upon accusations. As was previously found (Docket No. 129, Order of July 6, 2011, at 9, 10–11), these Inspector General defendants do not owe plaintiff any duty arising from Pritchard's (or other corrections officer defendants') alleged actions against other inmates and plaintiff fails to allege these defendants' personal involvement or liability, *see Law v. Cullen,* 613 F.Supp. 259, 262 (S.D.N.Y.1985) (unsubstantiated civilian complaints merely charges, not actual findings of abuse); *see also Hart v. Goord,* No. 08CV681, 2010 U.S. Dist. LEXIS 39888, at \*5, 2010 WL 1644242 (W.D.N.Y. Apr. 22, 2010) (Scott, Mag. J.) (denying discovery of grievances against corrections officer found to be unsubstantiated, with its probative value being quite limited); *Woodward v. Mullah,* No. 08CV463, 2010 U.S. Dist. LEXIS 77065, at \*8, 2010 WL 3023117 (W.D.N.Y. July 29, 2010) (McCarthy, Mag. J.). If this amendment is allowed to proceed, plaintiff is accepting the burden of proving that these Inspector General defendants erred in finding that charges against Pritchard and others were unsubstantiated, adding to the burden of proof plaintiff already has to establish the facts for his own case, *see Rasmussen v. City of New York,* No. 10 Civ. 1088, 2011 U.S. Dist. LEXIS 10089, at \*24–28, 2011 WL 477713 (E.D.N.Y. Feb. 2, 2011) (court there recognized that plaintiffs, in making this argument, took upon him the burden of showing that "every other unsubstantiated complaint on which they rely entailed a constitutional violation" and that the sample of cases cited were representative in order to resist a defense summary judgment motion).

Furthermore, these new defendants are not alleged to be Pritchard's supervisors to have supervisory liability applied to them. A supervisory relationship would provide a causal link between plaintiff's injuries allegedly from officer Pritchard and these Inspector General defendants. But no such link exists. The Inspector General defendants investigate grievances and complaints regarding violations of DOCS regulations; they have no role (or one alleged) in supervising corrections officers alleged to have committed violations.

**\*7** The case plaintiff cites in reply, *Danley v. Allen, supra,* 540 F.3d 1298, 1305, 1315, is distinguishable. There, the court found that there were numerous complaints about the corrections officer defendants on the excessive use of pepper spray and denial of adequate medical care that the supervisory defendants had through use of force reports and similar reports, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation. Plaintiff in the case at bar is closer to the precedent distinguished in *Danley;* the Eleventh Circuit discussed and distinguished *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003), where the plaintiff alleged that defendants were on notice due to widespread unconstitutional conduct but the court found that the supervisory defendants were not on notice of the guards' unconstitutional conduct because it did not allege specific facts showing the supervisors had knowledge of the guards actions and inactions, *Danley, supra,* 540 F.3d at 1314–15.

This differs from cases where the government employee has a documented record of misconduct that the governmental employer failed to monitor, *cf. Danley, supra,* 540 F.3d at 1315; for example, see *Vann v. City of New York,* 72 F.3d 1040, 1042–45 (2d Cir.1995), where a police officer with an extensive prior record of misconduct assaulted a person while off duty. The Second Circuit vacated a grant of summary judgment to municipal defendants there because of the officer's substantiated record of misconduct and personality disorder actions, *see id.* at 1050–51; *see also Rasmussen v. City of New York,* No. 10 Civ. 1088, 2011 U.S. Dist. LEXIS 10089, at \*24–28, 2011 WL 477713 (E.D.N.Y. Feb. 2, 2011). Here, plaintiff only has the *accusations* of misconduct, albeit numerous, without more. This alone is not enough to allege claims against those officials who received those accusations and found them to be without merit.

Thus, plaintiff's proposed amendment would be futile and his motion for leave to amend is denied and plaintiff's motion to reconsider this decision (Docket No. 135) is **denied.**

For the reasons stated above, plaintiff's motion for reconsideration of the denial of leave to amend the Complaint (Docket No. 135) is **denied.**

So Ordered.

## CONCLUSION

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4439092

Footnotes

1    Docket Nos. 20, 67, 74, 75 (Report & Recommendation), 94, 97 (Report & Recommendation), 104, 105, 128, 129, 131.

2    There apparently was some confusion on the plaintiff's part regarding the filing of the amended pleadings, *see* Docket No. 120, 2d Am. Compl., attached letter of May 23, 2011; he was ordered to file the second Amended Complaint (adding Khahifa) by June 8, 2011, and he was to file his *proposed* third Amended Complaint (naming five additional defendants) by May 27, 2011, to complete the pending motion for leave to further amend the Complaint, Docket No. 117, Order at 4, 6; *see also* Docket No. 116, Pl. Motion for Leave to Amend.

3    Defendants are to respond to these interrogatories by July 21, 2011, Docket No. 128, Order at 8–9.

4    As noted by one court, the collective bargaining agreement between DOCS and the corrections officers' union does not allow for transfer or termination of officers because of an unsubstantiated allegation, *Morris v. Eversley,* 282 F.Supp.2d 196, 200, 205 (S.D.N.Y.2003).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Campbell v. Kuhlmann, Not Reported in F.Supp. (1998)
1998 WL 249196

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 23 of 58

1998 WL 249196
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Larry G. CAMPBELL, Plaintiff,
v.
Robert H. KUHLMANN, et al., Defendants.

No. 91Civ6766 (SAS)(DFE).
|
May 15, 1998.

**Attorneys and Law Firms**

Larry G. Campbell, 79–C–0029, Sing Sing Correctional Facility, Ossining, NY.

Michael Kennedy, Assistant Attorney General, The State of New York, New York, NY.

*MEMORANDUM AND ORDER*

EATON, Magistrate J.

 **\*1** This is a *pro se* prisoner's rights action. Plaintiff alleges that his transfer from Sullivan Correctional Facility ("Sullivan" or "SCF") to Elmira Correctional Facility ("Elmira") in June 1991 was in retaliation for his exercise of his First Amendment rights.

The First Amended Complaint is dated 5/25/93. Defendants answered on 6/18/93. Plaintiff was deposed by AAG Angela M. Cartmill on 4/11/95 and on that date they both signed their consent that all proceedings (including trial) would be conducted before a Magistrate Judge.

Currently before me are defendants' motion for summary judgment and plaintiff's renewed application for appointment of counsel.

On or about 4/7/97 AAG Michael Kennedy mailed (a) a Notice of Motion for Summary Judgment, (b) a Rule 56.1 Statement of Material Facts and (c) a Memorandum of Law to plaintiff at Auburn Correctional Facility. In his 11/19/97 affirmation, plaintiff stated that he never received those papers. On 12/5/97 AAG Kennedy mailed a second set which was received by plaintiff, who by this time was housed at Sing Sing at his request. In response,

plaintiff submitted a 2/12/98 Affirmation in Opposition (with 33 exhibits, which are referred to hereinafter as "Exh. ___") and a 2/12/98 Rule 56.1 Statement of Material Facts. By letter dated 3/9/98, AAG Kennedy informed me that he would not be filing any reply papers. For the reasons below, I grant the motion for summary judgment as to defendants Dalsheim, Pitt and Stettner, but I deny summary judgment as to the other defendants.

BACKGROUND

Plaintiff is 55 years old and has been incarcerated since 1979. Since 1997 he has been a student in the master's degree program run by New York Theological Seminary for prisoners at Sing Sing. Over the years, plaintiff has brought a number of grievances and lawsuits stemming from his prison experiences, and he has been a vocal and articulate critic of the prison system.

At the time of the events which gave rise to this lawsuit, he was incarcerated at Sullivan. He had come to Sullivan from Green Haven Correctional Facility via the Central New York Psychiatric Center in Marcy on 6/3/88. (Exh. 6) On 7/11/88 he was admitted to the Intermediate Care Program ("ICP") at Sullivan (one of a number of such programs run by the New York State Office of Mental Health at state prisons). Two years later he was discharged to the general prison population while continuing to receive treatment from an ICP therapist as an outpatient. (See Exh. 5, ICP Discharge Committee evaluation and request for transfer dated 8/24/90, signed by defendants Stettner, Tucker and Onorati.) While at Sullivan plaintiff held several jobs, including inmate grievance clerk, "keyboard specialist" for the ICP program, ICP aide to defendant Stettner (a social worker who was clinical coordinator of the program) and clerk for the civilian Muslim chaplain. He had also served as assistant Imam. (Pl's 4/11/95 Depo., the transcript of which is Exh. A to AAG Kennedy's 4/4/97 Aff.—hereinafter "Pl's Depo."— at 110–120, 132–34, 168–69.)

*Plaintiff's allegations* (See First Amended Complaint ¶¶ 26–32)
 **\*2** Briefly stated, plaintiff alleges that the defendants employed at Sullivan wanted him transferred out of Sullivan because he had accused them of various types of harassment and abuse of himself and other inmates,

especially of mentally ill and mentally handicapped inmates. Significantly, he had lodged his then most recent accusations not only through internal DOCS grievance procedures but in letters to various governmental officials outside the DOCS structure, several independent agencies and the press. (See, *e.g.,* Exhs. 8–19) In particular, he was reporting an alleged, unprovoked beating of Vincent King, a mentally ill prisoner at Sullivan on 4/25/91 by Corrections Officer Bruce Tucker (not to be confused with Edward Tucker, who is one of the defendants in this lawsuit). According to plaintiff, those defendants who were Sullivan prison administrators knew that Bruce Tucker had a history of abuse and violence toward mentally ill and mentally handicapped inmates, and yet they assigned him the responsibility for running the ICP unit on the day shift. (Exh. 8, p. 2)

Plaintiff states that the "excessive harassment" of himself began in a 12/17/90 search of his cell, during which his typewriter was "confiscated." (1st Am.Compl.¶ 26) He filed suit in the New York Court of Claims and won a judgment for the loss of the typewriter. (Exhs. 32 and 33) He says that the harassment culminated in his transfer out of Sullivan on 6/24/91. Plaintiff states that in January 1991 "the local administration asked [him] not to go to the media" and that Superintendent Kuhlmann promised that he would resolve the Bruce Tucker "problem" if plaintiff postponed "going public." (Exh. 24) What precipitated the transfer to Elmira, in plaintiff's view, was that he had been scheduled to be interviewed during the week of 6/29/91 by reporters, including Sara Duran from the Middletown Times Herald Record and someone from the Albany Times Union, and a lawyer from Prisoner Legal Services. (*See* 1st Am. Compl. ¶ 30; Exh. 24 at 4; Pl's Depo. at 138) The interviews were to be about the alleged maltreatment of mentally ill inmates at SCF and other prison problems. (Exh. 27) Plaintiff's transfer, of course, prevented those interviews. Various journalists and agencies pursued the allegations, however, as did plaintiff from his subsequent locations. One result was an article, written by Sara Duran and published in the Times Herald Record in September 1991, about alleged prisoner abuse at Sullivan, including the Vincent King incident. (Exh. 23) Plaintiff also alleges that Elmira was particularly inappropriate for him because its prison population was much younger than he and there was a lot of "gang-like violence" there. (1st Am.Compl.¶ 33)

*Defendants' Motion for Summary Judgment*

The following defendants were served, have answered and now move for summary judgment:

1. Robert H. Kuhlmann, Superintendent of SCF

2. Ernest A. Edwards, First Deputy Superintendent of SCF

**\*3** 3. Wayne J. Wilhelm, Deputy Superintendent of Security at SCF

4. Edward V. Tucker, Deputy Superintendent of Programs at SCF

5. Clement B. Capuano, Deputy Superintendent of Administration at SCF

6. Walter Pitt, Corrections Captain at Sullivan

7. Richard Onorati, OMH Unit Chief of Mental Health Unit at SCF

8. Lilliam B. Stettner, Social Worker OMH/SCF

9. Thomas A. Coughlin, III, Commissioner New York State Department of Correctional Services ("DOCS")

10. Richard C. Surles, Commissioner NYS Office of Mental Health ("OMH")

11. Stephen Dalsheim, Superintendent of Downstate Correctional Facility

(The titles above indicate the positions held by the defendants in June 1991.)

In their Motion for Summary Judgment, defendants argue as follows:

(a) In the New York State Department of Corrections Services ("DOCS") the authority to order the transfer of an inmate from one prison to another is vested in the Office of Classification and Movement ("OCM"). Moreover, plaintiff was designated a "central monitor case," and such a prisoner can be transferred only if the OCM analyst gets approval from the Deputy Commissioner for Correctional Facilities or his designee. (Glasheen Amended Aff. at ¶ 4)

(b) None of the defendants worked in the OCM or the Office of the Deputy Commissioner for Correctional Services at the time of the transfer complained of. Thus

Campbell v. Kuhlmann, Not Reported in F.Supp. (1998)

1998 WL 249196

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 25 of 58

they could not have ordered the transfer. (Glasheen Amended Aff. at ¶ 6, Kennedy Aff. at ¶ 19)

(c) Plaintiff has not alleged, and did not provide in his deposition, facts showing that any of the defendants had any involvement in the 1991 transfer. (Kennedy Aff. at ¶ 19)

(d) Even assuming the Court were to find that one of the defendants was a proper defendant, the Amended Complaint fails to state a retaliation claim. (Def. Mem. at 9)

DISCUSSION

*The Standard for Summary Judgment*
Summary judgment may be granted on a showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Graham v. Henderson,* 89 F.3d 75 (2d Cir.1996); Fed. R. Civ. Pr. Rule 56(c). In reviewing the motion, the Court's role is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues that require a trial. *Candelaria v. Coughlin,* 787 F.Supp. 368, 372 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992). The court must resolve any ambiguities and draw any inferences against the moving party. *Graham* at 79; *Baker v. Zlochowon,* 741 F.Supp. 436 (S.D.N.Y.1990). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *Napoleoni v. Scully,* 932 F.Supp. 559, 561 (S.D.N.Y.1996); *see also Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984) (" 'Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." ' (citations omitted))

*Retaliation Claims under § 1983*
**\*4** In any retaliation action for the exercise of constitutionally protected rights, plaintiff must ultimately prove that the alleged retaliatory action "would not have been taken but for the exercise of those rights." *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977);

*Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994). If the retaliatory action would have been taken on a constitutionally valid basis in any event, then summary judgment for defendants is warranted. *Graham* at 80; *Baker,* 741 F.Supp. at 439.

*Retaliatory Transfer Claims*
Prison officials have broad discretion to transfer prisoners "for any reason or no reason at all," *Respress v. Coughlin,* 585 F.Supp. 854, 857 (S.D.N.Y.1984), citing *Montayne v. Haymes,* 427 U.S. 236, 243, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976), but may not transfer solely in retaliation for exercise of First Amendment rights. *Meriwether v. Coughlin,* 879 F.2d 1037 (2d Cir.1989); *Napoleoni,* 932 F.Supp. at 563. In a § 1983 claim for retaliatory transfer, the plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the defendants' decision to transfer him. *Graham,* 89 F.3d at 80–81; *Davis v. Kelly,* 981 F.Supp. 178, 181 (W.D.N.Y.1997). Then it is for the defendants to show by a preponderance of the evidence that plaintiff would have been transferred even in the absence of the protected conduct. *Lowrance v. Achtyl,* 20 F.3d at 535; *Lowrance v. Coughlin,* 862 F.Supp. 1090, 1102 (S.D.N.Y.1994); *Baker,* 741 F.Supp. at 439. If the transfer was for both proper and improper reasons, it may be upheld if it would have taken place on the basis of the proper reason alone. *Graham v. Henderson,* 89 F.3d 75 (2d Cir.1996); *Lowrance v. Achtyl,* 20 F.3d at 535. At trial plaintiff will have to convince a jury that his transfer from Sullivan would not have taken place except for his exercise of right to free speech.

*A prison official can be liable for requesting a retaliatory transfer even if he lacks the authority to order it.*
The most glaring flaw in defendants' argument is that it rests on the unstated assumption that the only proper defendants in a retaliatory transfer action are the persons vested with the final authority actually to order a transfer.

In their Mem. at p. 6 defendants conclude: "Thus, the State Defendants could not have *ordered* (emphasis added) the transfer of inmate Campbell...." But defendants cite to no law that restricts § 1983 liability to the person who *orders* the transfer. To the contrary, the cases show that such liability for retaliation can attach to one who requests the transfer or otherwise

participates in the decision to transfer, regardless of the defendant's position in the prison system hierarchy. What matters is not the title of the defendant, but whether or not the defendant had a retaliatory motive and some personal participation in the transfer. In some retaliatory transfer cases, only higher echelon officials are named as defendants (*e.g., Napoleoni, Respress*). In other cases, the defendants include both higher and lower level people (*e.g., Graham, Lowrance,* and *Candelaria*). In some cases the only defendants are guards and other staff members with little or no supervisory responsibility (*e.g., Baker* ). A defendant at one rung of the hierarchy may be liable even if some officials on the other rungs had no retaliatory motive. *Mt. Healthy, Graham.*

*Plaintiff has raised triable issues of material fact as to 8 of the 11 defendants.*

**\*5** Although this is a motion for summary judgment, defendants' main heading in the "Argument" section of their brief is "The complaint fails to state a retaliation claim ... upon which relief can be granted." (Def. Mem. at p. 6) Two paragraphs later the brief states, "Here, plaintiff fails to set forth any facts which support his conclusory assertion that the State defendants took any actions or, in any way, participated in the alleged violation of his constitutional rights." Def. Mem. at p. 7. On the contrary, plaintiff does offer facts to support his assertion —in the amended complaint, in his deposition and in his 33 Exhibits. On a motion for summary judgment, the Court looks at the whole record to determine whether issues remain for a jury. Fed. R. Civ. Pr. 56(c) Celotex, 417 U.S. at 324, 106 S.Ct. at 2553; *Napoleoni,* 932 F.Supp. at 561.

Defendants also contend, "Based upon plaintiff's deposition testimony and based upon the affidavit of John Glasheen, plaintiff cannot carry [the] burden" of proving that "but for the exercise of his First Amendment right, he would not have been transferred." (Def. Mem. at 10) However, the Glasheen affidavit does not support that conclusion; indeed, it does not really address any important issue.

Glasheen, a Classification Analyst in the DOCS Office of Classification and Movement, states that he is responsible for inmate transfers and "[is] familiar with the standards, procedures ... used ... in evaluating and effectuating [inmate transfers]...." However, Glasheen does not state that the policies with which he is familiar are the same

policies that were in effect in 1991 and he does not claim any personal knowledge of the events surrounding plaintiff's transfer. Plaintiff claims the pertinent policies were different in 1991, and sets forth his understanding of those policies (Pl's 11/19/97 Aff. ¶ 7; Pl's Rule 56.1 Statement at ¶¶ 5, 9, 10, 18) and copies of what purport to be sections of regulations (*Id.* at ¶ 19).

Glasheen further states, as does plaintiff, that plaintiff was designated a "central monitoring case" in 1991. (Glasheen Amended Aff. at ¶ 4, Pl's Depo. at 183) The import of this, according to Glasheen, is that for a Classification Analyst to exercise his authority to order the transfer of a central monitoring case, "a classification analyst must first obtain the approval of the Deputy Commissioner for Correctional facilities or his designee." (Glasheen Amended Aff. at ¶ 5.) However, Glasheen does not offer any specifics regarding the evaluation and effectuation of plaintiff's transfer, and the defendants' papers do not discuss the important issue of any allegedly legitimate reason for the transfer.

Finally the defendants contend, "Even if this Court determines that the State defendants were somehow personally involved in the alleged deprivation of plaintiff's constitutional rights, plaintiff still fails to state a retaliation claim and defendant's [sic] motion for summary judgment should be granted." (Def. Mem. at 9) I disagree. It is true, as defendants point out, that "the Second Circuit requires a higher level of pleading [for retaliation claims]," *Davis* at 181 (citing *Gill v. Mooney,* 824 F.2d 192 (2d Cir.1987)) "because such claims are particularly prone to abuse." *Graham,* 89 F.3d at 79 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). However, the Second Circuit also requires that "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest possible arguments that they suggest." *Graham,* 89 F.3d at 79, quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986); *Patrick,* 745 F.2d at 159 ("This Court has consistently held where subjective issues regarding a litigant's state of mind ... are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable ...." (citations omitted)); *Flaherty,* 713 F.2d at 13 ("[C]aution should be exercised in granting summary judgment where state of mind is in issue or when the party opposing the motion has been denied relevant discovery." (citations omitted)).

**\*6** In evaluating a claim of retaliatory transfer the questions to be asked are:

1) Was there an exercise of a First Amendment right—was plaintiff's act constitutionally protected? Here one of the acts was writing to the press about conditions at Sullivan —clearly protected speech.

2) Was the nature of that speech such that a jury might reasonably conclude it caused a desire to retaliate on part of prison officials? Certainly, if plaintiff's accusations are true, it would be reasonable to infer that the Sullivan defendants, at least, would be fearful of the consequences of publicity.

3) Was there an act that could be construed as retaliatory to the extent that it deprived plaintiff of his right to free speech or punished him for exercising free speech? A jury could find the transfer to be just such an act. The timing of the transfer and the sequence of events preceding it are just two factors that give rise to a reasonable inference that the transfer was motivated to keep plaintiff from being interviewed by reporters at Sullivan. *Lowrance v. Coughlin,* 862 F.Supp. at 1103; *Baker,* 741 F.Supp. at 440. The only other evidence of motivation is that someone at Sullivan found plaintiff to be "unsuitable" for Sullivan. (Exh. 24, letter from plaintiff to Prisoner Legal Services quoting an 8/16/91 letter from Coughlin to plaintiff) The defendants have not explained why he was "unsuitable." Nor have they offered to show that plaintiff would have been transferred from Sullivan to Elmira if he had never made public accusations of misconduct by officials at Sullivan.

4) Were any of the defendants personally involved in the retaliatory transfer? I find that only three defendants are entitled to summary judgment—Walter Pitt, Steven Dalsheim and Lilliam Stettner. Plaintiff's deposition conceded that Pitt had little to do with the transfer. (Pl's Depo. at 143) Dalsheim was the head of Downstate Correctional Facility, which was merely a place where plaintiff was held for a while on his way from Sullivan to Elmira. Stettner, a social worker, was plaintiff's supervisor in his prison job. There is no indication that she was motivated to retaliate against plaintiff; he says that she initially encouraged him to expose the King incident. (Pl's Depo. at 150–52)

As to each of the eight other defendants, plaintiff has proffered enough evidence to preclude summary judgment. I shall now proceed to set forth some of that evidence.

There is evidence that *Kuhlmann* (SCF Supt.):

— asked plaintiff not to contact the press and promised he would take care of the problems with Bruce Tucker (Pl's Depo. at 136)

— received plaintiff's complaint that SCF failed to mail plaintiff's 4/28/91 letters to the press about the King incident (1st Am.Compl.¶ 28)

— had to give his explicit approval for any transfer (Pl's Depo. at 123–24, 126–27; 2/12/98 Aff. at Exh. 4)

— endorsed an expedited lateral transfer request in plaintiff's case (Pl's 11/19/97 Aff. at ¶ 4)

**\*7** There is evidence that *Edwards* (SCF 1st Deputy Supt.):

— knew about the taking of plaintiff's typewriter (Pl's Depo. at 139)

— knew Bruce Tucker was abusive

— knew about plaintiff's 4/28/91 letters to the press

— was in charge of Kuhlmann's executive team (Pl's Depo. at 132) and any transfer request had to go through him (Pl's Depo. at 140)

There is evidence that *Wilhelm* (SCF Deputy Supt. of Security):

— investigated Campbell's complaints about SCF staff, including his complaint that his typewriter was taken (Pl's Depo. at 141)

— knew that Bruce Tucker was abusive and was informed of the King incident (Pl's Depo. at 151)

— knew about plaintiff's 4/28/91 letters to the press

Campbell v. Kuhlmann, Not Reported in F.Supp. (1998)

1998 WL 249196

— was required to sign the transfer request form and approve a transfer even if the transfer was not initiated by him (Pl's Depo. at 142)

There is evidence that *Edward Tucker* (SCF Deputy Supt. of Programs):

— knew about plaintiff's 4/28/91 letters to the press

— was empowered to approve a transfer (Pl's Depo. at 124, 142; Pl's 56.1 stmt. at ¶ 7)

— endorsed an expedient transfer request (Pl's 11/19/97 Aff. at ¶ 4; Pl's Depo. at 142)

There is evidence that *Capuano* (SCF Deputy Supt. of Administration):

— told the Imam to tell plaintiff to stop writing letters or face transfer (Pl's Depo. at 121–23, 142–43)

— had to approve plaintiff's transfer (Pl's 56.1 stmt. at ¶ 10; Exh. 4)

There is evidence that *Onorati* (OMH Unit Chief at SCF):

— knew that Bruce Tucker was abusive, and received copies of plaintiff's complaints about Bruce Tucker (Pl's Depo. at 148; 2/12/98 Aff. Exh. 10)

— got a telephone call from Surles complaining about plaintiff's activities (Pl's Depo. at 148–50)

— "called Stettner to task" for allowing plaintiff to expose the Vincent King incident (Pl's Depo. at 149–50)

— was empowered to approve a transfer (Pl's Depo. at 148–49)

— had on-site managerial authority over all OMH employees at SCF (Pl's 56.1 stmt. at ¶ 12)

There is evidence that *Surles* (Commissioner, N.Y.S.OMH):

— received a copy of each of plaintiff's complaints about ICP incidents (Pl's 56.1 stmt. at ¶ 15) and plaintiff's 4/28/91 letters (Pl's Depo. at 134–35, 154–55)

— telephoned Onorati on 5/15/91 to reprimand him and complain about plaintiff (Pl's 56.1 stmt. at ¶ 15, Pl's Depo. at 154))

— approved the transfer to Elmira on the pretext that Elmira could provide better mental health services for plaintiff when in fact he knew plaintiff had been discharged from OMH (Pl's Depo. at 154–57)

There is evidence that *Coughlin* (Commissioner of DOCS)

— received a copy of plaintiff's complaint to the Inspector General about the King incident (Exh. 10)

— could have rescinded the transfer but instead ratified it (Pl's Depo. at 153–54)

— wrote to plaintiff that he was transferred because he was found "unsuitable" by people at Sullivan (*See* Pl's. 56.1 stmt. at ¶ 13; Exh. 24)

*The Future Course of this Lawsuit*

**\*8** As to these eight defendants, this case is almost ready for trial. Plaintiff has already listed the names of the witnesses he intends to call to testify at trial, and he has provided copies of his 33 Exhibits. In addition, he is entitled to all documents in the possession or control of DOCS (1) relating to his transfer out of Sullivan in June 1991, (2) relating to his protests and arrangements for the interviews from April 1991 through June 1991 and (3) if any of the defendants intends to elicit any evidence about plaintiff's prison conduct for a longer period of time, then all documents relating to plaintiff during that longer period of time.

As I understand it, defendants have refused to provide him with documents (1) relating to his transfer out of Sullivan in June 1991 and (2) relating to his protests and arrangements for the interviews from April 1991 through June 1991, claiming they personally do not have custody and control of such documents. The Second Circuit has recently expressed disapproval of a similar position taken by the State. *Hendricks v. Coughlin,* 114 F.3d 390, 393 (2d Cir.1997) ("Even though [plaintiff] did seek to launch paper discovery, DOCS Officers produced none of the requested documents on the asserted ground that they did not individually have them in their possession, control

or custody and DOCS itself would not permit [plaintiff] Hendricks to review his transfer records in its possession. That stonewalling led to ... the district court ... treating the document request as a subpoena...." 114 F.3d at 393.

I order the eight remaining defendants, including defendant Coughlin, to produce to plaintiff by 7/30/98, with a copy to me, all documents in their custody or control, or within the custody or control of DOCS, that (1) relate to his transfer out of Sullivan in June 1991, (2) relate to his protests and arrangements for the interviews from April 1991 through June 1991 and (3) if any of the defendants intends to elicit any evidence about plaintiff's prison conduct for a longer period of time, then all documents relating to plaintiff during that longer period of time.

I also direct the defendants to serve and file their portions of the Pre Trial Order by 8/30/98, in compliance with my enclosed Instructions for the Pre Trial Order. Plaintiff must serve and file his portions of the Pre Trial Order by 9/30/98. The trial will commence with jury selection on 11/3/98 at 10:00 a.m. in Courtroom 6B at 500 Pearl Street. I direct AAG Kennedy to arrange for transporting Mr. Campbell to New York City for the trial and lodging him, and to advise me of the arrangements by 8/30/98.

*Plaintiff's motion for appointment of counsel*
I deny plaintiff's motion for counsel. On 7/13/93 Magistrate Judge Lee granted plaintiff's motion for assignment of counsel, but no lawyer had volunteered as of 12/28/94, and on that date Judge Scheindlin withdrew the order for appointment of counsel. Plaintiff is very articulate and I am sure that he will be able to present his own case adequately. Appointed attorneys are a scarce resource, and this is not a major case. If plaintiff prevails, the likely damages award would be around $6,000. *See Lowrance v. Coughlin,* 862 F.Supp. 1090 (S.D.N.Y.1994).

**All Citations**

Not Reported in F.Supp., 1998 WL 249196

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Cotto v. Senkowski, Not Reported in F.Supp. (1997)

1997 WL 665551

1997 WL 665551
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Marcus COTTO, Plaintiff,

v.

Daniel SENKOWSKI, Superintendent of
Clinton Annex; T.J. Howard, Hearing Officer;
J. Maggy, Sergeant; Byron Wind, Officer;
Barry Rock, Officer; and Philip Coombe,
Jr., Acting Commissioner, Defendants.

No. 95–CV–1733 (RSP/DNH).
|
Oct. 23, 1997.

**Attorneys and Law Firms**

Marcus Cotto, Plaintiff, pro se, Auburn Correctional
Facility, Auburn, New York.

Hon. Dennis C. Vacco, Attorney General of the State
of New York, Attorney for Defendants, Albany, New
York, Darren O'Connor, Esq., Asst. Attorney General, of
Counsel.

MEMORANDUM DECISION AND ORDER

POOLER, D.J.

**\*1** This matter comes to me following a report-
recommendation by Magistrate Judge David N. Hurd,
duly filed on the 29th of August, 1997. Following ten days
from the service thereof, the Clerk has sent me the entire
file, including any and all objections filed by the parties
herein.

In his *pro se* complaint, Cotto alleges that in August
1995, he and some other inmates were attacked while
incarcerated at Clinton Correctional Facility. Compl.,
Dkt. No. 1, ¶ 2. Cotto alleges that as a result of this
incident he was charged with engaging in violent conduct
and conduct which disturbed the order of the facility. *Id.*
Although Cotto was found guilty of these charges and
sentenced to a term of one year in the Special Housing
Unit and loss of six months good time, his sentence was
reversed on administrative appeal. *Id.* Cotto brought this
action pursuant to 42 U.S.C. § 1983, alleging various

violations of his rights under the Eighth and Fourteenth
Amendments. *Id.*

By motion filed March 3, 1997, defendants sought
summary judgment. Dkt. No. 17. Plaintiff filed no
papers in opposition to the motion. In his report-
recommendation, the magistrate judge recommended that
I grant defendants' motion pursuant to Local Rule 7.1(b)
(3), which provides that, absent a showing of good cause,
failure to respond to a motion shall be deemed consent to
the relief requested. Dkt. No. 19, at 2. Cotto has filed no
objections to the report-recommendation.

After careful review of all of the papers herein, including
the magistrate judge's report-recommendation, it is

ORDERED that the report-recommendation is hereby
approved, and it is further

ORDERED that defendants' motion for summary
judgement is GRANTED and the complaint against them
dismissed in its entirety, and it is further

ORDERED that the Clerk of the Clerk serve a copy of
this order on the parties by regular mail.

IT IS SO ORDERED.

DAVID N. HURD, United States Magistrate Judge.

*REPORT–RECOMMENDATION*

This matter was referred to the undersigned by
the Honorable Rosemary S. Pooler, for Report–
Recommendation pursuant to the Local Rules of the
Northern District of New York.

Plaintiff commenced the above § 1983 action making
various allegations regarding violations of his civil
rights under the United States Constitution. Pursuant to
Fed.R.Civ.P. 56, the defendants have moved for summary
judgment alleging that there is no genuine issue as to any
material fact and that as a matter of law they are entitled
to judgment.

The defendants have filed a motion pursuant to
Fed.R.Civ.P. 56 granting summary judgment in favor
of the defendants on grounds including that there is

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 31 of 58

Cotto v. Senkowski, Not Reported in F.Supp. (1997)

1997 WL 665551

no genuine issue as to any material fact, and that the defendant is entitled to judgment as a matter of law.

It is now more than ninety days beyond the date when the response papers were due, and the plaintiff has not filed any papers in opposition to the motion. "Failure to file any papers as required by this rule shall, unless for good cause shown, be deemed by the court as consent to the granting or denial of the motion, as the case may be." Rules of U.S. Dist. Ct. for Northern Dist. of N.Y., L .R. 7.1(b)(3).

**\*2** NOW, upon careful consideration of the notice of motion, statement pursuant to Local Rule 7.1(F), with exhibits attached, and the memorandum of law submitted in support of the defendants' motion; and there being no opposition to the motion, it is

RECOMMENDED that the motion be granted and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(I), the parties have ten days within which to file written objections to the foregoing report. *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992). Such objections shall be filed with the Clerk of the Court with a copy to be mailed to the chambers of the undersigned at 10 Broad Street, Utica, New York 13501. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(I); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989); and it is

ORDERED, that the Clerk of the Court serve a copy of this Report–Recommendation, by regular mail, upon the parties to this action.

### All Citations

Not Reported in F.Supp., 1997 WL 665551

---

**End of Document**                              © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 11173632
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Patrick Guillory, Plaintiff,

v.

Andrew Cuomo, et. al., Defendants.

9:14–CV–0971 (MAD/RFT)
|
Signed 12/02/2014

**Attorneys and Law Firms**

PATRICK GUILLORY, 09–B–0714, Clinton Correctional Facility, P.O. Box 2002, Dannemora, New York 12929, Plaintiff, pro se.

**DECISION and ORDER**

Mae. A. D'Agostino, United States District Judge

## I. INTRODUCTION

 *1 The Clerk has sent to the Court for review a pro se civil rights complaint filed by plaintiff Patrick Guillory pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis. Dkt. No. 1 ("Cmplt."); Dkt. No. 2 ("IFP Application"). On October 22, 2014, plaintiff filed a "motion" seeking to supplement the complaint as against defendants Andrew Cuomo ("Cuomo") and Anthony Annucci ("Annucci"). (Dkt. No. 7). On November 24, 2014, the Court issued a Text Order granting plaintiff's request to supplement his original Complaint with the papers received from plaintiff on October 22, 2014. (Dkt. No. 9). In the Text Order, the Court also ordered the Clerk to docket the supplemented pleading with the original Complaint as plaintiff's Amended Complaint. (Dkt. No. 10) ("Am.Cmplt.").

## II. DISCUSSION

### A. IFP Application

Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Therefore, plaintiff's IFP Application (Dkt. No. 2) is granted.

### B. Initial Screening

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [1]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95–CV–0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

 *2 A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to

2014 WL 11173632

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the–defendant–unlawfully–harmed–me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 F. App'x 102, 104 (2d Cir.2009).

### C. Summary of the Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95–CV–0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

Plaintiff, a frequent litigator in this Circuit, is a prison inmate currently being held at Clinton Correctional Facility ("Clinton C.F.").[2] Am. Cmplt. at 3. In the complaint, plaintiff challenges the conditions of confinement "throughout DOCCS", specifically, the violence perpetrated by inmates upon other inmates and by the staff upon the inmates. *See id.* at 4–5. Plaintiff vaguely references beatings, "stabbings" and sexual assaults. *See id.* at 6. Plaintiff alleges that Cuomo, "knew of the above beatings" based upon the fact that plaintiff wrote "several letters and affidavits" and Cuomo failed to act. *See id.* at 16. Plaintiff also asserts that Cuomo "contribut[ed] to the murder rate all across the state of New York" due to the ineffectiveness of the Aggression Replacement Training ("ART") Program. Am. Cmplt. at 33, 36. Plaintiff claims that Cuomo retained unqualified instructors and allowed offenders to circumvent the program. *See id.* at 30, 38. Specifically, plaintiff claims that on September 16, 2014, inmates were told by Clinton C.F. Correction Counselor, Mr. Tallon, that they did not need to attend class on Fridays and that the program would be held for four weeks rather than the required eight weeks.[3] *See id.* at 26–27. Between September 16, 2014 and October 8, 2014, plaintiff contends that Mr. Tallon taught the class for thirty minutes on eight days. *See id.* at 29. Plaintiff claims that he expressed his concern regarding the program to Mr. Law, his mental health therapist, and Mr. Norcross, his supervising counselor.[4] Am. Cmplt. at 31–32. Plaintiff alleges that Cuomo and Annucci were aware of Mr. Tallon's actions and thus, allowed offenders to circumvent judicial mandates. *See id.*

**\*3** With respect to Annucci, plaintiff claims Annucci had "full knowledge" of the "pattern of pervasive inmate—inmate violence" through daily "unusual" incident reports. *See id.* at 6. Defendant Albert Prack ("Prack"), SHU Director, is also "fully aware of the inmate–inmate violence" due to the "thousand upon thousands" of misbehavior reports. *See id.* at 7. Plaintiff claims that Prack has a "policy" of "slavery" including "forcing" inmates to feed other inmates without pay. *See id.* at 8. Plaintiff claims he was denied over 23 non–consecutive meals due to this policy and asserts, "[t]he specific days will be provided to the court during discovery when I obtain my movement locations." Am. Cmplt. at 8–9. Plaintiff also asserts that Annucci and Prack are aware of the beatings by staff because plaintiff "raised the assaults through my disciplinary appeals". *See id.* at 9. Plaintiff also claims that Prack violated his Equal Protection rights because he "will not grant reconsideration to offenders who file suit relating to disciplinary proceedings". *See id.* at 13. As an example, on February 21, 2014, plaintiff received a letter from Prack regarding plaintiff's request for reconsideration of his Superintendent's Hearing on

November 13, 2013 conducted at Greene Correctional Facility ("Greene C.F."). Prack wrote to plaintiff, at the request of Annucci, and advised that since the matter was the subject of litigation, no reconsideration would be afforded. *See id.* at 23.

Plaintiff claims that defendant Deputy Inspector General Liviston ("Liviston"), conducted investigations that were "ineffective" and while plaintiff does not believe that Liviston "condones" the violence, his investigations are "unlikely to result in any changes in the near future". *See id.* at 14. Plaintiff also claims that defendant Deputy Inspector General Graziano ("Graziano") instituted an unconstitutional procedure during his investigation of an alleged beating that took place on March 25, 2014. *See id.* at 15. Plaintiff claims that Graziano knew that officers were using excessive force and all efforts to "control, monitor, investigate, and address the use of force are altogether bankrupt." Am. Cmplt. at 16. Plaintiff contends that defendant Karen Bellamy ("Bellamy"), the DOCCS IGP Program Director, was aware of all beatings due to her position. *See id.* at 12.

In the complaint, plaintiff refers to incidents which are the basis of four (4) pending lawsuits in this Circuit. Plaintiff claims that these incidents demonstrate that defendants "condoned" a pattern of excessive force and abuse. *See Guillory v. Skelly,* No. 12–CV–0847 (W.D.N.Y. filed Sept. 5, 2012); *Guillory v. Foley,* 14–CV–265 (W.D.N.Y. Apr. 11, 2014); *Guillory v. Overbaugh,* No. 13–1353 (MAD/ RFT) (N.D.N.Y. filed Oct. 13, 2013) and *Guillory v. Boll,* No. 12–CV–1771 (FJS/DEP) (N.D.N.Y. filed Dec. 3, 2012). Am. Cmplt. at 11.

Construed liberally, plaintiff claims that all defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because defendants "condoned excessive force and violence" and were deliberately indifferent to the violence. Plaintiff also claims that Prack violated his First Amendment and Fourteenth Amendment rights because Prack had a policy of refusing to grant appeals. Plaintiff also contends that Annucci violated his First Amendment rights because Annucci knew about the officers pattern of retaliating against inmates for filing grievances.

**D. Analysis**
It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* No. 04–CV–7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986)) (other citation omitted). If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [5]

**1. Plaintiff's Claims Against Defendant Cuomo**
**\*4** Plaintiff's claims against Cuomo must be dismissed because plaintiff did not sufficiently allege Cuomo's personal involvement. *See Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002). Plaintiff references his "numerous letters" to Cuomo and seemingly alleges constructive notice based upon his correspondence. Plaintiff did not annex any letters as an exhibit to the complaint and provides no specifics regarding any correspondence. Moreover, plaintiff does not allege that Cuomo responded to plaintiff or otherwise communicated with plaintiff in any manner. Even assuming plaintiff sent correspondence to Cuomo, it is well settled in the Second Circuit that merely receiving letters from an inmate does not constitute personal involvement for the purposes of Section 1983 liability. *See Sealey v. Giltner,* 116 F.3d 47,

51 (2d Cir.1997). Courts have consistently held that, "if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." *Lloyd v. City of New York,* No. 12 Civ. 3303, 2014 WL 4229936, at *10 (S.D.N.Y. Aug. 4, 2014) (the fact that the defendant forwarded the plaintiff's complaint to another official for handling does not translate into liability under § 1983); *see also Rivera v. Fischer,* No. 08–CV–6505, 655 F.Supp.2d 235, 238 (W.D.N.Y. Sept. 18, 2009) (citing *inter alia, Mateo v. Fischer,* No. 08 Civ. 7779, 682 F.Supp.2d 423, 431 (S.D.N.Y. Feb. 8, 2010)) (granting motion to dismiss claim against DOC commissioner for lack of personal involvement where prisoner alleged that commissioner forwarded his complaint letters to subordinates for investigation and sent a response to prisoner stating that prisoner had not provided sufficient information to support his allegations. Moreover, while plaintiff makes specific allegations involving the ART program, plaintiff's claims do not represent constitutional challenges because inmates do not have a constitutional right to participate in prison programs. *Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir.1979).

Further, any claims against Governor Cuomo in his official capacity are frivolous because state officials acting in their official capacities are not subject to monetary liability under § 1983. *Dube v. State Univ. Of New York,* 900 F.2d 587, 595 (2d Cir.1990). The Court recognizes that plaintiff is proceeding pro se and that this requires the Court to treat his pleadings with a certain degree of liberality; despite this, plaintiff's conclusory allegations against Cuomo are wholly insufficient to state a plausible claim. Plaintiff's claims against Cuomo are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Plaintiff's Claims Against Defendants Annuucci and Prack

Plaintiff does not allege that either Annucci or Prack directly participated in the alleged constitutional violations but claims that they were on notice of the pattern of abuse and thus, "condoned" the use of excessive force and violence. Plaintiff asserts that Annucci and Prack were on notice of the violence based upon the "pattern of retaliating against inmates for filing grievances"; the daily "unusual" incident reports and

"thousands" of misbehavior reports. Courts have held that a prisoner can establish the requisite link between a supervisory defendant and an underlying constitutional deprivation by showing "a history of widespread abuse" that put the supervisor on notice of the need to correct the unconstitutional practices, and that he failed to do so. *Green v. Herbert,* No. 04–CV–6213, 677 F.Supp.2d 633, 637 –638 (W.D.N.Y. Jan. 5, 2010) (citing *inter alia, Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990)) ("[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences"). However, here, plaintiff asserts only conclusory allegations with no facts demonstrating notice. Plaintiff does provide any information regarding any specific incident nor has he provide any facts supporting the vague and ambiguous allegations concerning notice. "The mere fact that other incidents, involving other inmates, may have occurred, [ +], does not mean that the supervisory defendants were on notice of them, that they tolerated staff assaults on inmates, or that they were otherwise personally involved in the violation that forms the basis of plaintiff's excessive–force claim." *Id.* Plaintiff's conclusory allegations are based solely upon Annucci's and Prack's position of power and thus, plaintiff's attempt to establish liability based upon Annucci's and Prack's supervisory roles is inappropriate. *See, e.g., Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (vague and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability). Plaintiff did not name any correction officers as defendants nor did he identify any perpetrators of the violence alleged in the complaint. The complaint lacks any facts or information relating to any specific instance of violence and does not identify plaintiff as a victim or any other victim of any violence. Plaintiff cites to his four prior lawsuits but does not allege how any defendant named herein had any involvement or any knowledge of any of the incidents described in any of those lawsuits. Plaintiff has not alleged that Annucci or Prack directly participated in any alleged beatings or excessive force. The complaint lacks facts connecting the supervisors to any behavior of any specific officer or inmate or any violent incident. Plaintiff does not contend that supervisors directed the subordinate guards not to monitor inmates or to act unlawfully. The complaint is devoid of any allegations that defendants had any knowledge of even one specific incident of the

excessive force of which plaintiff complains. As plaintiff failed to identify any specific perpetrator of violence, plaintiff cannot establish that defendants were on notice of unconstitutional conduct or the need to correct or to stop the conduct by further training or supervision. *Cottone v. Jenne,* 326 F.3d 1352, 1361 –1362 (11 th Cir.2003).

**\*5** Plaintiff vaguely asserts that Annucci and Prack had notice of the violence by virtue of the fact that plaintiff "raised the assaults through my disciplinary appeals." The fact that a disciplinary hearing was held establishes that some form of investigation occurred, but plaintiff does not allege that defendants Annucci or Prack were involved directly. Plaintiff is not challenging any hearing nor does he allege what the hearing was about. *See Martin v. Patterson,* No. 09–CV–1372 (LEK/ ATB), 2010 WL 3033796, at \*3 (N.D.N.Y. July 16, 2010). Plaintiff uses the phrase "equal protection" as against Prack however, plaintiff's attempt at asserting a cause of action based upon a violation of equal protection rights fails. Plaintiff cites to the letter from Prack and claims that it establishes a pattern of refusing to grant reconsideration of disciplinary hearings. However, plaintiff does not provide any specifics regarding any disciplinary appeal and the complaint does not allege facts plausibly suggesting that plaintiff was treated differently from any similarly situated individual. Thus, plaintiff's equal protection claims are wholly insufficient and fail to state a claim upon which relief may be granted.

In light of the foregoing, plaintiff's claims against Annucci and Prack fail as a matter of law and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [6]

### 3. Plaintiff's Claims Against Defendant Bellamy

Plaintiff's allegations against Bellamy fail based upon the same reasoning set forth in Part IID2. With respect to the Bellamy, plaintiff brings no specific allegations of personal involvement. Plaintiff states that the inmate grievance program was under the direction of Bellamy and thus, she was aware of the pattern of abuse. Plaintiff makes no other allegations against Bellamy. This conclusory statement, without specific supporting facts, cannot create any constitutional violations by Bellamy. *See Smith v. Martuscello,* No. 10–CV–1532 (NAM/RFT), 2012 WL 4450025, at \*4–5 (N.D.N.Y. May 24, 2012) (the plaintiff

sued Bellamy for "the systematic denials of all prisoner grievances asserting guard brutality and misconduct, refusing to take notice of patterns thereto, and being deliberately indifferent to such matters.").

Plaintiff's claims against Bellamy fail as a matter of law and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 5. Plaintiff's Claims Against Defendants Liviston and Graziano

"The Inspector General investigates grievances and complaints regarding violations of DOCS regulations; they have no role (or one alleged) in supervising corrections officers alleged to have committed violations." *Brown v. Pritchard,* No. 09–CV–214, 2011 WL 4439092, at \*6–7 (W.D.N.Y. Sept. 23, 2011) (the Inspector General did not owe the plaintiff any duty arising from corrections officers alleged actions against other inmates and the plaintiff failed to allege these defendants' personal involvement or liability). There is no constitutional right to an investigation by government officials. *Phelan v. Chin,* No. 10–CV–6344, 2013 WL 4495796, at \*5 (W.D.N.Y. Aug. 19, 2013) (citations omitted). Furthermore, there is "no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." *See id.* (citation omitted) (the plaintiff's claims against the Inspector General based upon an inadequate investigation or refusal to investigate fail to state a colorable constitutional claim); *see also Renelique v. Duncan,* No. 03–CV–1256, 2007 WL 1110913, at \*14 (N.D.N.Y.Apr.12, 2007) (dismissing inmate's claim that Inspector General failed to investigate an alleged assault upon receipt of inmate's letter complaint; finding the "allegations fail to state a cause of action because [the inmate] has no constitutional right to an investigation, and he has failed to establish the personal involvement of the Inspector General").

**\*6** Here, plaintiff explicitly concedes that Liviston did not condone any illegal behavior and plaintiff does not contend that either Liviston or Graziano had any personal involvement in any constitutional deprivation. Plaintiff's claims against Liviston and Graziano fail as a matter of law and will be dismissed pursuant to 28 U.S.C. § 1915(e) (2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Request for Preliminary Injunction[7]

Plaintiff asks this Court to issue a preliminary injunction requiring defendants to "take appropriate action to end the pattern of violence among inmates and between staff and inmates". Am. Cmplt. at 20.

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)). The standard a court must utilize in considering whether to grant a request for injunctive relief is well–settled in this Circuit. *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35, 38 (2d Cir.2010). To prevail on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Id.* at 35; *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir.2011). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Id.*; *see also Jolly v. Coughlin,* 76 F.3d 468, 473 (2d Cir.1996). Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Mkts.*, 598 F.3d at 35 n. 4 (internal quotation marks omitted). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL–CIO v. New York Shipping Ass'n, Inc.,* 965 F.2d 1224, 1228 (2d Cir.1992); *Perri v. Bloomberg,* No. 06–CV–0403, 2008 WL 2944642, at * 2 (E.D.N.Y. July 31, 2008). The district court has wide discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

Here, plaintiff seeks an order forbidding defendants or their subordinates from future retaliation. Construing plaintiff's motion in the light most favorable to him as a pro se plaintiff, the Court finds that plaintiff failed to substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate,

with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Hancock v. Essential Res., Inc.,* No. 91–CV–0213, 792 F.Supp. 924, 928 (S.D.N.Y.1992) ( "Preliminary injunctive relief cannot rest on mere hypotheticals."). Plaintiff has not supported his motion with any claims of ongoing misconduct, the dates of such misconduct, the injuries he claims to have suffered from the misconduct or the identities of persons responsible for such conduct. *See Groves v. Davis,* No. 11–CV–1317 (GTS/RFT), 2012 WL 651919, at *8 (N.D.N.Y.2012) (the plaintiff's alleged fear of future wrongdoing is insufficient to warrant the extraordinary remedy of injunctive relief). Moreover, at this juncture, plaintiff has failed to assert any viable cause of action and all allegations in the complaint are dismissed without prejudice. Thus, plaintiff has not demonstrated sufficient likelihood of success on the merits of his complaint, or "sufficiently serious questions going to the merits" and a balance of hardships in his favor to warrant the granting of his request for a temporary restraining order. Plaintiff's motion for preliminary injunctive relief is therefore denied. For the foregoing reasons, plaintiff's motion for preliminary injunctive relief is denied in its entirety.

### F. Request for Class Certification

**\*7** Plaintiff asserts that he is bringing this action on his own behalf and on behalf of other persons similarly situated. Am. Cmplt. at 1. Plaintiff seeks to have this matter certified as a class action. *See id.* at 20.

It is well settled that a class action cannot be maintained by a pro se litigant since non–attorneys may not represent anyone other than themselves. *Miller v. Zerillo,* No. 07–CV–1719, 2007 WL 4898361, at *1 (E.D.N.Y. Nov. 2, 2007) (citing cases and recommending denial of class certification without prejudice until an attorney makes an appearance); *see also Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998); 28 U.S.C. § 1654. Since the named plaintiff is not an attorney, the request to have this matter class certified must be denied without prejudice for renewal in the event an attorney appears on plaintiff's behalf.

### III. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**.[8] The Clerk of the Court shall provide the Superintendent of the facility that plaintiff has designated as his current location with a copy of plaintiff's authorization form (Dkt. No. 3) and notify officials that plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that pursuant to the Court's review under 28 U.S.C. § 1915 and § 1915A, plaintiff's claims are **DISMISSED without prejudice** for failure to comply with the pleading standards and state a claim; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action, he must file a signed amended complaint that cures the pleading defects identified above in this Decision and Order; and it is further

**ORDERED** that, upon plaintiff's full compliance with this Decision and Order, the Clerk shall return the file to this Court further review; and it is further

**ORDERED** that if plaintiff fails to fully comply with the terms of this Decision and Order **within thirty (30) days** from its filing date, the Clerk shall enter Judgment indicating that this action is **DISMISSED with prejudice, without further order of this Court**, pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that plaintiff's request for preliminary injunctive relief is **DENIED**; and it is further

**ORDERED** that plaintiff's request to certify this action as a class action is **DENIED without prejudice**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 11173632

Footnotes

1    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

2    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

3    Mr. Tallon is not a defendant herein.

4    Mr. Law and Mr. Norcross are not defendants herein.

5    Whether all five *Colon* factors for supervisor liability remain available in light of the Supreme Court's decision in *Iqbal,* 556 U.S. 662, has been debated by the district courts in this circuit. *See, e.g., Pearce v. Estate of Longo,* 766 F.Supp.2d 367, 376 (N.D.N.Y.2011), *rev'd in part on other grounds sub nom., Pearce v. Labella,* 473 F. App'x 16 (2d Cir.2012) (recognizing that several district courts in the Second Circuit have debated *Iqbal* 's impact on the five *Colon* factors); *Kleehammer v. Monroe Cnty.,* 743 F.Supp.2d 175, 185 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third *Colon* categories pass *Iqbal* 's muster.... "); *D'Olimpio v. Crisafi,* 718 F.Supp.2d 340, 347 (S.D.N.Y.2010) (disagreeing that *Iqbal* eliminated *Colon* 's personal involvement standard). Regardless of whether *Colon* or an *Iqbal* –limited standard applies, plaintiffs have failed to allege the personal involvement of defendants.

6    As discussed in Part IID1, plaintiff's claims against Annucci with respect to the ART program are insufficient to state a cause of action under section 1983.

7   The Court notes that plaintiff has failed to submit his motion for injunctive relief in the form that the Court's Local Rules require. Specifically, he has neglected to file a memorandum of law in support of his motion. See L.R. 7.1(a), (f). In light of the lack of clarity surrounding plaintiff's application and his pro se status, the Court will overlook this deficiency and will consider plaintiff's motion for a temporary restraining order at this time.

8   Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

---

**End of Document**                                           © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 40 of 58

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

1994 WL 23069
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dale HENDRICKSON, Plaintiff,

v.

UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
|
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an inmate
then in confinement at the Federal Correctional
Institution in Otisville, New York ("Otisville"), filed this
action for injunctive relief and damages based upon
alleged violations of his rights under the United States
Constitution, Amendments I, IV, V, VI, IX, and XIII,
and upon violations of various laws and/or regulations
governing prison administration. [1] The Complaint named
as defendants G.L. Hershberger ("Hershberger"), the
United States Attorney General ("Attorney General"),
Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the
Bureau of Prisons ("BOP"), and the Otisville Medical
Department ("OTV Medical Department") (collectively
"Defendants"). Defendants moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, or, in the alternative, for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set out below, Defendants'
Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint,
pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, for failure to state a claim upon which relief
can be granted. Rule 12(c) provides:

> After the pleadings are closed but
> within such time as not to delay
> the trial, any party may move
> for judgment on the pleadings.
> If, on a motion for judgment on
> the pleadings, matters outside the
> pleadings are presented to and
> not excluded by the court, the
> motion shall be treated as one for
> summary judgment and disposed of
> as provided in Rule 56, and all
> parties shall be given reasonable
> opportunity to present all material
> made pertinent to such a motion by
> Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are
employed for dismissing a complaint for failure to state
a claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a
Rule 12(c) motion to dismiss for failure to state a claim
upon which relief can be granted. See Ad–Hoc Comm.
of the Baruch Black & Hispanic Alumni Ass'n v. Bernard
M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987); see
also Viacom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R.
Miller, Federal Practice and Procedure ¶ 1367, at 515–
16 (1990). Thus, the Court must read the Complaint
generously, drawing all reasonable inferences from the
complainant's allegations. See California Motor Transp. v.
Trucking Unlimited, 404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations in
[the] amended complaint, which are accepted as true, to
documents attached to the complaint as an exhibit or
incorporated in it by reference, to matters of which judicial
notice may be taken, or to documents either in plaintiff['s]
possession or of which plaintiff[ ] had knowledge and
relied on in bringing suit." Brass v. American Film
Technologies, Inc., 987 F.2d 142 (2d Cir.1993); accord
Allen v. Westpoint–Pepperell, Inc., 945 F.2d 40, 44 (2d
Cir.1991); Cortec Indus., Inc. v. Sum Holding L.P., 949
F.2d 42, 47–48 (2d Cir.1991), cert. denied, 112 S.Ct.
1561 (1992); Frazier v. General Elec. Co., 930 F.2d 1004,
1007 (2d Cir.1991). Defendants, therefore, are entitled to
dismissal for failure to state a claim only if the Court finds
beyond a doubt that "plaintiff can prove no set of facts"

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary

receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 42 of 58

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of his complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4**  For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

**All Citations**

Not Reported in F.Supp., 1994 WL 23069

---

Footnotes

1    The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

2    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

---

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Collins v. Goord, S.D.N.Y., September 22, 2008

2007 WL 1110913
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gary RENELIQUE, Plaintiff,
v.
George B. DUNCAN, et al, Defendants.

No. 9:03CV1256.
|
April 12, 2007.

**Attorneys and Law Firms**

Gary Renelique, New York, NY, pro se.

Bridget Erin Holohan, Albany, NY, for Defendants.

MEMORANDUM OPINION

LYLE E. STROM, United States Senior Judge.

**\*1**  This matter is before the Court on defendants' motion for summary judgment (Filing No. 69). Plaintiff did not respond. The Court has reviewed the motion, defendants' statement of material facts, evidentiary submissions and defendants' supporting brief and finds that defendants' motion for summary judgment should be granted.

I. Standards

**A. Summary Judgment**
On a motion for summary judgment, all reasonable factual inferences must be drawn in favor of the non-moving party. See, e.g., *Savino v. City of New York,* 331 F.3d 63, 71 (2d Cir.2003)(citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis omitted) (quoting *Fed.R.Civ.P. 56(e)*) (citation omitted). "Conclusory allegations, conjecture,

and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) (citation omitted). Thus, "statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999) (citations omitted).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72 F.3d 1040, 1048 (2d Cir.1995) *(citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996)(citing *Anderson,* 477 U.S. at 247-48). While the submissions of pro se litigants are liberally construed, see, e.g., *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), the fact that the plaintiff is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.,* 2002 U.S. Dist. LEXIS 25166, 2003 WL 102853, at \*5 (S.D.N.Y. Jan.9, 2003) (citing cases).

**B. Exhaustion of Administrative Remedies**
The Prison Litigation Reform Act of 1995 states: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The exhaustion requirement is a prerequisite to all prisoner claims, even if the requested remedy is unavailable in an administrative grievance proceeding. *Porter,* 534 U.S. at 524 *(citing Booth v. Churner,* 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). This requirement exists in order "to reduce the quantity and improve the quality of

prisoner suits ... [and to afford] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 524-25.

**\*2** The failure to exhaust administrative remedies is an affirmative defense that may be waived, *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004), and is subject to estoppel. *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). Where defendants have raised the issue of administrative exhaustion as an affirmative defense and plaintiff has plausibly countered that assertion, the court must conduct a three-step inquiry. *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). First, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Hemphill,* 380 F.3d at 686 *(citing Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004)). Second, the court must determine whether defendants forfeited the defense of administrative exhaustion by failing to raise or preserve it, *id. (citing Johnson,* 380 F.3d 691), or whether defendants are estopped to raise the defense by their own actions inhibiting the inmate's exhaustion of remedies. *Id. (citing Ziemba,* 366 F.3d at 163). Third, the court must inquire whether the prisoner has alleged "special circumstances" that justify his failure to exhaust administrative remedies. *Id. (citing Giano v. Goord,* 380 F.3d 670 (2d Cir.2004)).

Under the New York Department of Corrections' well-established inmate grievance procedure, an inmate has fourteen days from the date of the incident complained of to file a complaint, but "mitigating circumstances" may toll the deadline.

## II. Plaintiff's Claims

Plaintiff's amended complaint identifies twenty-eight (28) defendants and then sets forth six causes of action which consist of thirty-five (35) numbered paragraphs which are arbitrarily divided into the six claims in a seemingly random and incoherent way. "This is a civil rights action alleging discrimination under the American Disability Act, assault (sic) and battery, deprivation of medical treatment, retaliation for filing grievance complaints, and cruel and unusual treatment." He also makes claims about denial of due process.

## III. Facts

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not specifically countered nor opposed by plaintiff. *See* N.D.N.Y.L.R. 7.1(a)(3)( "Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Plaintiff Gary Renelique ("plaintiff") has not filed any response. Therefore, under this Court's local rules, all facts set forth by defendants are deemed admitted.

### Facts Related to Plaintiff's Claims Against Defendants Novello, Williams, Paolano and Shimkunas

Defendant Novello is the Commissioner of the New York State Department of Health. Plaintiff's only claim against Novello is that he wrote to her to investigate whether the licenses of the medical and mental health staff at Great Meadow were still valid and that his letters were ignored (AC, ¶ 16; Transcript of Deposition of Plaintiff Gary Renelique ("Renelique Dep."), 42:19-43:20 (attached as Exhibit J to Holohan Affirm.) (Filing Nos. 69-24, 69-25).

**\*3** Plaintiff alleges that on October 2, October 6 and October 17, 2002, plaintiff requested that Lieutenant Williams ("Williams") investigate his complaints of misconduct by officers (AC, ¶ 17). At his deposition, plaintiff testified that he made both verbal and written complaints to Williams about not being allowed to attend callouts but that Williams ignored his requests for an investigation (Renelique Dep. 99:4-100:11).

Plaintiff alleges "Defendant Paolano despite knowing the Plaintiff [sic] medical records stated that plaintiff should not be place [sic] in facility who [sic] has steps because of plaintiff disability" (AC, ¶ 9). Plaintiff's medical records, demonstrate that he was examined and treated by Dr. Silverberg, not Dr. Paolano. See Silverberg Aff., Ex. A (Filing No. 69-39); Paolano Aff. ¶ 3 (Filing No. 69-36). Thus, plaintiff is suing Dr. Paolano merely because of his position as Medical Director at Great Meadow.

Plaintiff alleges that on August 15, August 31, and October 23, 2002, he complained to defendant Shimkunas, the Chief of the Mental Health Unit at Great Meadow, regarding Wurzberger, Kim and Rawson (AC, ¶ 13).

Plaintiff alleges that Shimkunas failed to supervise these employees, who refused to see him for his serious mental health problems (Renelique Dep. 126:17-127:11). At his deposition, plaintiff testified that he wrote letters to defendant Shimkunas, but that Shimkunas ignored his letters (Renelique Dep. 127:5-11).

**Facts Related to Plaintiff's Claim Against Defendant Carpenter**

Plaintiff alleges that defendant Carpenter refused him advanced legal copies despite knowing that plaintiff had a court deadline (AC, ¶ 11). At his deposition, plaintiff testified that in August 2002, he "needed about 400 or 500 copies" to respond to interrogatories served by Assistant Attorney General Patrick McRae in *Renelique v. Holloway,* 01-CV-0601 (N.D.N.Y.)(Renelique Dep. 15:1-6). Under DOCS Directive 4833, an inmate can receive advance photocopies for legal documents where he has insufficient funds in his account and the specific document is required by the court. See Carpenter Aff., ¶ 6 (Filing No. 69-31) and Ex. A (Filing No. 69-32). Given the vast number of documents included in plaintiff's request, defendant Carpenter required plaintiff to provide documentation that each specific document was required by the courts (Carpenter Aff., ¶ 7). Thus, defendant Carpenter did not deny plaintiff's request in an effort to prejudice plaintiff's litigation, but rather, to ensure compliance with DOCS Directives. *Id.* at ¶ 7. Moreover, a review of the docket in *Renelique v. Holloway,* 01-CV-0601 (N.D.N.Y.) demonstrates that in August 2002, plaintiff requested and was granted an extension until September 19, 2002, to respond to defendants' discovery requests. See Filing No. 49. Further, plaintiff testified at his deposition that he was eventually able to pay for photocopies and to respond to defendants' discovery requests (Renelique Dep. 14:10-15). Finally, a review of the docket in *Renelique v. Holloway* demonstrates that the action is trial ready. *Renelique v. Holloway,* 01-CV-0601, Filing No. 78. Thus, plaintiff has not suffered any injury as a result of Carpenter's denial of his request for advanced copies.

**Facts Related to Plaintiff's Claims Against Rawson**

**\*4** Plaintiff alleges that on September 9 and 27, 2002, defendant Rawson refused to provide him with documents that were important to pending litigation in the U.S. District Court for the Southern District of New York (AC, ¶ 15). At his deposition, plaintiff elaborated on his claims against Rawson and testified that she informed plaintiff that he needed to request copies of his mental health records from the Director of the Mental Health Unit at Great Meadow (Renelique Dep. 17:2-14). Plaintiff testified that he made such a request which the Director then denied *(Id.* at 17:15-18). Plaintiff then filed a grievance and the records were ultimately turned over to him, and he was able to submit the records to the court *(Id.* at 17:19-18:5). The action was still pending at the time of plaintiff's deposition *(Id.* at 18:9-10).

**Facts Related to Plaintiff's Claims Against Celeste and Vedder**

Plaintiff alleges that on May 8 and 15, 2003, defendant Celeste refused to open his cell door, preventing him from going to the law library (AC, ¶ 33). Plaintiff alleges that on four occasions, he tried to complain about "those" officers, but that defendant Vedder failed to initiate an inquiry into their misconduct (AC, ¶ 30). At his deposition, plaintiff specified that he tried to complain to defendant Vedder that the officers (apparently this includes Celeste) were not opening his cell door so he was not able to go to the law library, but that Vedder refused to stop and talk with him (Renelique Dep. 110:9-111:18). Plaintiff does not identify any injury as a result of his inability to go to the law library.

**Facts Related to Plaintiff's Claim Against Reams**

The only allegation in the amended complaint against defendant Sally Reams is that on July 18, 2002, and March 26, 2003, she refused to accept plaintiff's grievance (AC, ¶ 28). At his deposition, plaintiff quantified his allegation by testifying that defendant Reams refused to accept about 10 to 15 of his grievances (Renelique Dep. 106:22-107:15).

**Facts Related to Plaintiff's Claim Against Kelly**

The only claim in the complaint against defendant Captain Kelly alleges that on May 10, 2003, Captain Kelly threatened plaintiff (AC, ¶ 32). At his deposition, plaintiff testified that after Captain Kelly learned plaintiff wrote letters to Commissioner Goord and others in Albany regarding events at Great Meadow, Captain Kelly called him into his office and told plaintiff that if he was having problems at Great Meadow, he should first bring them to Captain Kelly's attention (Renelique Dep. 112:24-113:9). Plaintiff further testified that Captain Kelly called him a cry baby and told plaintiff he did not want people

outside Great Meadow knowing what goes on inside Great Meadow *(Id.* at 113:24-114:4).

**Facts Related to Plaintiff's Claim Against Potter**
Plaintiff alleges that on April 1, 2003, defendant Potter denied his claims dated March 18, 2003, even though plaintiff had a receipt for the property in question (AC, ¶ 29). At his deposition, plaintiff clarified this claim, testifying that defendant Potter denied his property claim (Renelique Dep. 49:5-50:12).

**Facts Related to Plaintiff's Claim Against Bundrick**
 **\*5**  Plaintiff alleges that on October 17, 2002, defendant Bundrick, the Nurse Administrator at Great Meadow, kicked him in the lower back and stepped on plaintiff's right hand and wrist (AC, ¶ 10). Plaintiff never made these allegations before filing this action. See Bundrick Decl., ¶ 2 (Filing No. 69-42). Plaintiff was seen by the medical staff on October 17, 2002, for complaints of chest pain. See Bundrick Decl., ¶¶ 3-5; see also Silverberg Aff., Ex. A, pp. 9-10. Once plaintiff was informed he was not having a heart attack, he informed defendant Bundrick that the real reason he wanted to see the medical staff was because he wanted a "feed in cell" order (Bundrick Decl., ¶ 6). Bundrick informed plaintiff this was not a proper use of emergency sick call. *Id.* Plaintiff then "fell down" and began shaking violently. *Id.* at ¶ 7. This activity ceased with the application of an ammonia inhalant. *Id.* Plaintiff was again warned about the proper use of emergency sick call and left the clinic without further incident. *Id.* at ¶ 9.

When plaintiff filed a grievance regarding his medical care on October 17, 2002, he never alleged that he was assaulted by Bundrick. Holohan Affirm., Ex. B (Filing No. 69-16). Specifically, he complained that the nurses were laughing at him and that Bundrick refused to issue him a "feed in cell" order. *Id.* Nowhere in his October 17, 2002, grievance or his January 2, 2003, appeal statement did plaintiff allege any use of force. *Id.* Plaintiff was seen by the medical staff just one day later, October 18, 2002, and complained about injuries he sustained from a fall. Silverberg Aff., Ex. A, p. 10.

**Facts Related to Plaintiff's Claims Against Poirier, Pomainville, Weeks, Wolford, Perry and Armstrong**
On March 14, 2003, CO Weeks searched inmate Renelique's cell looking for stolen law library supplies.

Holohan Affirm., Ex. F (Filing No. 69-20). As a result of the search, several items of contraband were confiscated including highlighters, pens and a bottle of white-out. *Id.* Plaintiff was keeplocked and issued a misbehavior report ("MR") charging him with theft of property. *Id.* Plaintiff was issued the MR by CO Weeks. *Id.* CO Pomainville signed the MR as a witness. *Id.*

On March 18, 2003, a Tier II hearing was conducted by Lieutenant Armstrong. Holohan Affirm., Ex. G (Filing No. 69-21). During the hearing, plaintiff never testified that he was assaulted. *Id.* Plaintiff never even mentioned Wolford or Perry by name. *Id.* Rather, plaintiff's defense was that he arrived at Great Meadow with the property. *Id.* at p. 2. Lieutenant Armstrong accepted the defense with respect to the highlighters and pens because plaintiff's transfer records reflected he was in possession of such items. *Id.* at p. 3. However, the transfer form made no reference to the bottle of white-out. *Id.* Therefore, plaintiff tried to argue that the white-out only had water in it. *Id.* at p. 4.

 **\*6**  Lieutenant Armstrong, who was capable of observing the contents of the bottle, rejected this defense noting that the bottle contained white-out. *Id.* at p. 5. At the conclusion of the hearing, plaintiff was found guilty and sentenced to time served in keeplock (4 days). Holohan Affirm., Ex. F (Filing No. 69-20). Plaintiff appealed the guilty disposition to the Superintendent's Office. *Id.* In his appeal statement, plaintiff alleged that defendants Poirier, Weeks, Pomainville and Armstrong were falsely accusing him of stealing property because they are racists. *Id.* Plaintiff never mentioned an alleged assault and never mentioned Perry or Wolford. *Id.*

On that same day, March 18, 2004, plaintiff also filed a grievance alleging that defendants Poirier, Weeks, Pomainville and Armstrong were falsely accusing him of stealing property, but never mentioned an alleged assault. Holohan Affirm., Ex. C (Filing No. 69-17). Plaintiff's grievance never mentioned Perry or Wolford. *Id.*

Two days later, on March 20, 2003, plaintiff was seen by the medical staff. Silverberg Aff., Ex. A, p. 21. He sought pain medication in association with complaints of right elbow and left finger pain which he said started on March 6, 2003-eight days before the alleged assault. *Id.* It is not until two months later, when plaintiff wrote a letter to the Inspector General's Office, that he alleges he was assaulted

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 47 of 58

on March 14, 2003. See Holohan Affirm., Ex. H (Filing No. 69-22). Like all plaintiff's written statements prior to this action, plaintiff never alleged that Perry or Wolford assaulted him. *Id.*

**Facts Related to Plaintiff's Claim Against Roy**
Plaintiff wrote a letter to the Inspector General's Office complaining that he was assaulted at Great Meadow Correctional Facility. *Id.* While his complaint letter was received by the Inspector General's Office, there is no indication that the Inspector General himself, reviewed the complaint or was involved in the investigation. A thorough investigation was completed by Investigator Vacca. *Id.* Investigator Vacca concluded that plaintiff's claims of excessive force were unsubstantiated for the same reasons discussed above. *Id.* Nothing in the record suggests that the complaint investigation was inadequate or was incompetently performed. *Id.*

**Facts Related to Plaintiff's Claims Against Silverberg, Nunez and Nesmith**
While plaintiff was at Great Meadow, he was seen by the medical staff at least seventy times. Silverberg Aff., ¶ 3 (Filing No. 69-38). Plaintiff was also seen five times by Dr. Silverberg and once by Dr. Nunez. *Id.,* Ex. A, p. 1, 2, 11, 18, 22, 26; see also Nunez Decl., ¶ 4 (Filing No. 69-41). Both doctors examined plaintiff and noted his bizarre gait and verbal tic. Silverberg Aff., ¶¶ 6, 7; Nunez Decl., ¶ 5. Both doctors concluded that most of plaintiff's physical complaints were the manifestation of a mental illness. Silverberg Aff., ¶ 21, Ex. A, p. 2, 22; Nunez Decl., ¶ 8. Other than plaintiff's Hepatitis C and chronic lower back pain, neither doctor found any medical causes for plaintiff's litany of complaints. Silverberg Aff., ¶¶ 5, 10, 13, 14, 18, 20; see also Nunez Decl., ¶¶ 6, 8. For example, plaintiff complained of head trauma and seizures but recent MRI and EEG tests were normal. Silverberg Aff., ¶ 10. Similarly, plaintiff complained of decreased hearing in his left ear but an outside audiology consult did not reveal any hearing loss. *Id.* at ¶ 16; Ex. A, p. 25.

**\*7** With respect to plaintiff's Hepatitis C, plaintiff's liver functions were monitored every four months. Silverberg Aff., ¶ 9. Plaintiff's disease was mild and did not warrant immediate treatment. *Id.* at ¶ 9; Nunez Decl., ¶ 8. With respect to plaintiff's lower back pain, Dr. Silverberg issued a permit for a back brace, which plaintiff was provided on February 26, 2003. Silverberg Decl., ¶ 15.

Plaintiff was also treated by the Physician Assistant Ted Nesmith. Specifically, on September 23, 2002, plaintiff complained of left thumb pain from a fall from his bed. Nesmith Aff. ¶ 8 (Filing No. 69-40). Plaintiff was not in acute distress and x-rays were ordered. *Id.* An initial reading of the x-rays was negative. *Id.* When plaintiff continued to complain of pain for approximately one week, a re-examination revealed that he was not in acute or apparent distress, and there was no tenderness, swelling or bruising. *Id.* at ¶ 10. In light of the lack of physical findings, plaintiff was treated with elevation. *Id.* Plaintiff did not report any further pain or discomfort to the medical staff. *Id.* at ¶ 11.

On June 2, 2003, PA Nesmith treated plaintiff for complaints of indigestion and dry skin. *Id.* at ¶ 12. With respect to the indigestion, PA Nesmith prescribed Prevacid. *Id.* With respect to the dry skin, no dry skin was observed, thus no treatment was warranted. *Id.*

On July 8, 2003, PA Nesmith treated plaintiff for complaints of a vague lump just above his belly button. *Id.* at ¶ 5. Upon examination, plaintiff's abdomen was soft, non-tender and there was no lump seen or felt. *Id.* In light of no physical findings, PA Nesmith determined that observation was the best course of treatment. *Id.* Other than repeating his complaint to a nurse two days later, there is no record of plaintiff complaining about this lump again. *Id.* at ¶ 6.

**Facts Related to Plaintiff's Claims Against Wurzberger and Kim**
During plaintiff's incarceration at Great Meadow from July 2002 to July 2003, his mental health providers were Dr. Wurzberger and Ms. Kim, a social worker. See generally, Wurzberger Aff. (Filing No. 69-37) and Kim Decl (Filing No. 69-43). Prior to plaintiff arriving at Great Meadow, it had been determined that he could benefit from the services of the Mental Health Units at various facilities. Wurzberger Aff., ¶ 4. In fact, prior to his arrival at Great Meadow, OMH staff designated plaintiff as an OMH Level 1. Kim Decl., ¶ 3. An OMH Level 1 is the highest level assigned to inmates by OMH. *Id.* This designation may have been the impetus for plaintiff's transfer to Great Meadow, which has the capability to treat inmates with an OMH Level 1. *Id.* at ¶ 5.

Upon his arrival at Great Meadow on or about July 15, 2002, he was scheduled for a psychiatric evaluation on July 26, 2002. Wurzberger Aff., ¶ 4. Plaintiff did not appear for his evaluation and he was rescheduled for the following week. *Id.* On July 31, 2002, plaintiff again failed to show up for his psychiatric evaluation. *Id.* at ¶ 5. As this was the second time he failed to appear, a MHU officer called the housing unit and plaintiff was reminded of his appointment. *Id.* Plaintiff again chose not to show up, and he was rescheduled for a third time. *Id.* On August 9, 2002, Dr. Wurzberger evaluated plaintiff for the first time. *Id.* at ¶ 6. Dr. Wurzberger observed that plaintiff had multiple somatic complaints and preoccupation with physical complaints. *Id.* His chief complaint was that he was not being properly treated by the medical staff. *Id.* His records reflected a history of mental health treatment since 1999, with various diagnoses from none to delusional disorder. *Id.* He had been transferred to Great Meadow with a diagnosis of Delusional Disorder, Mixed Type. *Id.* Dr. Wurzberger also observed that plaintiff walked with a bizarre gait, which seemed to be a combination of a "pigeon-toed" gait and a post-stroke hemiparesis (shifting randomly from side-to-side). *Id.* at ¶ 7. It was Dr. Wurzberger's professional opinion that plaintiff's bizarre gait was not due to any physical problem, but he was uncertain whether plaintiff was intentionally feigning his physical problems or whether his complaints were the manifestation of a mental disorder. *Id.* Plaintiff's evaluation revealed his speech to be clear and goal directed. *Id.* at ¶ 8. There were no signs of abnormal psychomotor activity and there were no overt psychotic symptoms. *Id.* He denied hallucinations and denied self-harm thoughts, plans or intent. *Id.* His cognitive functions were intact and his judgment was adequate as to daily living circumstances. *Id.* Plaintiff's main preoccupation was with what he considered to be the right kind of medical treatment, and he was totally consumed by the quest to get surgery and be provided with amenities and services for handicapped inmates. *Id.* at ¶ 9.

**\*8** Dr. Wurzberger discussed with plaintiff that he saw no signs or symptoms of major psychiatric illness and that Dr. Wurzberger agreed with the plaintiff that he did not need any psychotropic medications at that time. *Id.* at ¶ 10. Just prior to plaintiff's arrival, he had refused such medication at the previous facility. *Id.* Dr. Wurzberger recommended supportive counseling that would help him deal with his frustrations and feelings of despondency

in a more effective manner and obtain a more realistic perspective overall. *Id.*

Following the evaluation and a review of plaintiff's records, Dr. Wurzberger changed his diagnosis to a somatoform disorder, non-specific. *Id.* at ¶ 11. A somatoform disorder is a syndrome where the patient has a history of many physical complaints and is preoccupied with perceived physical ailments despite the lack of medical findings. *Id.* Dr. Wurzberger's treatment was supportive counseling with Ms. Kim at least once a month. *Id.* at ¶ 13. Plaintiff was also scheduled for a follow-up evaluation in one month. *Id.*

One month later, on September 9, 2002, plaintiff was reevaluated by Dr. Wurzberger. *Id.* at ¶ 14. He came into the office with the same bizarre gait. *Id.* He was alert, oriented, coherent and relevant. *Id.* His mood was anxious, affect was modulated. *Id.* There were no signs of abnormal psychomotor activity, and there were no overt psychotic symptoms. *Id.* He denied hallucinations and denied self-harm thoughts or intent. *Id.* His cognitive functions were intact. *Id.* He remained obsessed with the same somatic preoccupations and complaints as well as the perceived lack of response to his medical needs by the Medical Department. *Id.* at ¶ 15. Dr. Wurzberger tried to discuss with him some practicable ways to maintain a realistic perspective, but he remained entrenched in his perception of not receiving adequate care. *Id.* As there were no signs of a major psychiatric illness, Dr. Wurzberger continued to recommend supportive counseling services and noted that plaintiff should be re-evaluated as needed. *Id.* at ¶ 16.

Dr. Wurzberger evaluated plaintiff for the last time on November 27, 2002, finding him alert, oriented, coherent, and relevant. *Id.* at ¶ 17. His mood was anxious and his affect was modulated. *Id.* He continued to deny hallucinations and denied self-harm thoughts or intent. *Id.* His cognitive functions were intact. *Id.* As usual, plaintiff had multiple complaints regarding perceived physical ailments and lack of adequate treatment from the medical department. *Id.* at ¶ 18. He was also now preoccupied with the thought of possibly having Hepatitis C and was trying to prove that he incurred the liver damage when treated by his psychiatrist on Rikers Island. *Id.* This quest and struggle seemed to be the main focus of his life and took up most of his time and emotional energy. *Id.* He was eating and sleeping well and, overall he was

functioning adequately in his environment. *Id.* at ¶ 19. Dr. Wurzberger again discussed with him the fact that he does not seem to need psychotropic medications at this time, but plaintiff was assured of the availability of these medications and encouraged to reconsider the option of trying some medications if he developed some physiological symptoms of anxiety or depression. *Id.* At no time did plaintiff present to Dr. Wurzberger any further need for evaluation or for medication. *Id.* at ¶ 20.

**\*9** Throughout this time, and for the following eight months, plaintiff also received supportive counseling from Ms. Kim. *Id.; see also* Kim Decl. ¶¶ 10-11. Ms. Kim's notes reflect a stable mental condition. Wurzberger Aff., ¶ 21; Kim Decl. ¶ 7. As recommended by Dr. Wurzberger, Ms. Kim provided supportive counseling once per month. Wurzberger Aff., Ex. A, pp. 416-23. Ms. Kim's notes also demonstrate that her observations of plaintiff revealed that he was stable, not in acute distress and functioning appropriately in the prison population at Great Meadow. Kim Decl., ¶¶ 6 and 7. After providing proper supportive counseling for approximately one year, plaintiff's OMH Level was redesignated as Level 3. *Id.* at ¶ 10.

Plaintiff filed his initial complaint on October 16, 2003 (Filing No. 1) and his amended complaint on December 24, 2003 (Filing No. 6). The amended complaint names twenty-eight individuals as defendants in both their official and individual capacities. All defendants other than defendant Perry filed their answer on June 2, 2004 (Filing No. 44). Perry filed his answer on August 20, 2004 (Filing No. 47). Defendants filed their motion for summary judgment on December 9, 2005 (Filing No. 69). Plaintiff has never filed any response to this motion.

## IV. Analysis

A careful review of plaintiff's complaint and his deposition testimony fails to evidence any claim as to defendant Campito. Campito is mentioned in the amended complaint but only as a person stating that plaintiff's finger was swollen (AC, ¶ 11). This does not state a claim, and defendant Campito is entitled to summary judgment.

## A. Ignoring Complaints

Plaintiff's claims against defendants Novello, Williams, Paolano, Shimkunas and Vedder are limited to allegations that they ignored his complaints. It is well settled that ignoring complaints from an inmate fails to establish personal involvement in the alleged constitutional violation. *Johnson v. Wright,* 234 F.Supp.2d 352, 363 (2d Cir.2002). Therefore, these defendants are entitled to summary judgment.

## B. Interference With Litigation Claims

Plaintiff alleges denial of access to the courts claims against four defendants. It is well settled that inmates have a First Amendment right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)(modified on other grounds by *Lewis v. Casey,* 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that: (1) the defendant acted deliberately and maliciously; and (2) that plaintiff suffered an actual injury. *Lewis,* 518 U.S. at 353; *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994). Plaintiff has not demonstrated either prong in any of his claims.

### 1. Deputy Superintendent of Programs David A. Carpenter

Plaintiff alleges that Carpenter refused him advanced legal copies despite knowing that plaintiff had a court deadline (AC, ¶ 7). Plaintiff testified that in August 2002, he needed advanced legal copies to respond to interrogatories served upon him in *Renelique v. Holloway,* 01-CV-0601 (N.D.N.Y.). Renelique Dep. 10:17-12:24. Plaintiff does not allege that Carpenter acted deliberately and maliciously in denying his request for advance legal copies. Under DOCS Directive 4833, an inmate can receive advance photocopies for legal documents if he has insufficient funds in his account and the specific document is required by the court. Plaintiff wanted to make photocopies of 400-500 pages of documents. *Id.* at 14:24-15:4. Considering the large number of documents included in plaintiff's request, Carpenter reasonably and in good faith required plaintiff to provide documentation that each specific document was required by the courts. Thus, defendant Carpenter did not deny plaintiff's request in an effort to prejudice plaintiff's litigation, but rather, to ensure compliance with DOCS Directives. Carpenter Aff., ¶ 7.

**\*10** Moreover, a review of the docket in *Renelique v. Holloway*, 01-CV-0601 (N.D.N.Y.) demonstrates that in August 2002, plaintiff requested and was granted an extension until September 19, 2002, to respond to defendants' discovery requests. *See* Docket No. 49. Plaintiff also testified that he was eventually able to pay for photocopies and responded to defendants' discovery requests. Renelique Dep. 14:10-15. Finally, a review of the docket in *Renelique v. Holloway* demonstrates that the action is trial ready. *See* Docket No. 78. Since plaintiff was able to obtain the photocopies and was not injured, he fails to establish a denial of access to courts claim. Accordingly, summary judgment will be granted as to defendant Carpenter both because Carpenter did not act deliberately or maliciously and because plaintiff suffered no injury from the initial denial of free legal copies.

### 2. Defendant Jennifer Rawson, RNC

Plaintiff alleges that on September 9 and 27, 2002, defendant Rawson refused to provide him with documents that were important to pending litigation in the U.S. District Court for the Southern District of New York (AC, ¶ 15). At his deposition, plaintiff testified that Rawson informed plaintiff that he needed to request copies of his mental health records from the Director of the Mental Health Unit at Great Meadow. Renelique Dep. 17:9-16. Plaintiff further testified that he made such a request and the Director denied his request. *Id.* at 17:15-18. Plaintiff filed a grievance and the records were ultimately turned over to him, and he was able to submit the records to the court. *Id.* at 17:19-18:3. The action was still pending as of plaintiff's deposition. *Id.* at 18:9-10.

Plaintiff fails to state a cause of action against defendant Rawson for two reasons. First, based upon plaintiff's own testimony, defendant Rawson was not the individual that denied plaintiff access to his mental health records. Rather, she referred plaintiff to the appropriate official. Second, plaintiff ultimately gained access to the records and was able to submit them to the court while the action was still pending. Thus, plaintiff fails to demonstrate actual injury and defendant Rawson is entitled to summary judgment.

### 3. Defendant Celeste

Plaintiff alleges that on May 8, and May 15, 2003, defendant Celeste refused to open his cell door, preventing him from going to the law library (AC, ¶ 33). Plaintiff has not identified any injury resulting from his inability to go to the law library. At the time of plaintiff's deposition, he testified that all the lawsuits he has filed since his incarceration were still pending and that his inability to go to the law library on May 8, 2003, had not resulted in dismissal of any of his actions. Renelique Dep. 120:14-122:4. Thus, plaintiff cannot establish actual injury. Therefore, defendant Celeste is entitled to summary judgment.

### C. Defendant Sally Reams

**\*11** Plaintiff's only complaint against defendant Sally Reams ("Reams") is that on July 18, 2002, and March 26, 2003, she refused to accept plaintiff's grievance (AC, ¶ 28). At his deposition, plaintiff quantified his allegation by testifying that Reams refused to accept about 10 to 15 of his grievances. Renelique Dep. 107:13-15. Nonetheless, it is well settled that the inmate grievance process is "not required by the Constitution and therefore a violation of such [state process] does not give rise to a claim under *§ 1983*." *Murray v. Kirkpatrick,* 2007 U.S. Dist. LEXIS 11249, at \*6-7 (W.D.N.Y. Feb. 13, 2007)(citing *Cancel v. Goord,* 2001 U.S. Dist. LEXIS 3440, at \*9, 2001 WL 303713, at \*4 (S.D.N.Y. Mar.29, 2001). Thus, even assuming Reams refused to accept plaintiff's grievances, as a matter of law, she did not violate plaintiff's constitutional rights. Accordingly, Reams is entitled to summary judgment.

### D. Captain Kelly

Plaintiff's only claim against defendant Captain Kelly alleges that he threatened the plaintiff on May 10, 2003 (AC, ¶ 32). At his deposition, plaintiff testified that after Captain Kelly learned plaintiff wrote letters to Commissioner Goord and others in Albany regarding events at Great Meadow, Captain Kelly called him into his office and told plaintiff that if he was having problems at Great Meadow, he should first bring them to Captain Kelly's attention. Renelique Dep. 112:24-113:19. Plaintiff further testified that Captain Kelly called him a cry baby and told plaintiff he did not want people outside Great Meadow knowing what goes on inside Great Meadow. *Id.* at 113:20-114:2. Accepting these allegations as true and assuming that Captain Kelly's comments amount to verbal harassment and threats, such a claim is still not cognizable under *§ 1983. Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) *(citing Moncrieffe v. Witbeck,* 2000 WL 949457, at \*3 (N.D.N.Y. June

29, 2000)(Mordue, J.)(allegations that corrections officer laughed at inmate not actionable under § 1983); *Carpio v. Walker,* 1997 WL 642543, at *6 (N.D.N.Y. Oct.15, 1997)*(Pooler, J. & DiBianco, M.J.)("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation"). Accordingly, Captain Kelly is entitled to summary judgment.

### E. Eighth Amendment Claims

Plaintiff alleges four causes of actions for violations of the Eighth Amendment. Specifically, plaintiff alleges that he was subjected to excessive force on October 17, 2002, and March 14, 2003. Plaintiff further alleges that he was denied proper medical treatment by Dr. Silverberg and Dr. Nunez as well as Physician Assistant Nesmith. Finally, plaintiff alleges that he was denied proper treatment for his mental disorder.

#### 1. Excessive Force Claim

An Eighth Amendment claim of cruel and unusual punishment based on a claim of excessive force consists of two components: (1) a subjective component which focuses on the defendant's motive for his conduct; and (2) an objective component which focuses on the conduct's effect. *Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000). The objective component of a constitutional claim of excessive force requires that the violation be "sufficiently serious by objective standards." *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999) (internal quotation marks and citation omitted). The subjective component focuses on the wantonness of the defendants. *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994). "[I]n the excessive force cases, the 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " *Blyden v. Mancusi,* 186 F.3d 262-63 (2d Cir.1999).

#### a. October 17, 2002, Excessive Force Allegations

**\*12** Plaintiff alleges that on October 17, 2002, defendant Bundrick, the Nurse Administrator at Great Meadow, kicked him in the lower back and stepped on his right hand and wrist (AC, ¶ 10). Plaintiff never made these allegations before filing this action. It is undisputed that plaintiff was seen by the medical staff on October 17, 2002, for complaints of chest pain. See Bundrick Decl.,

¶¶ 3-5; see also Silverberg Aff., Ex. A, pp. 9-10. It is also undisputed that when plaintiff filed a grievance regarding his medical care on October 17, 2002, he never alleged that he was assaulted by Bundrick. *See* Holohan Affirm., Ex. B. By not alleging the assault in his grievance, plaintiff has failed to exhaust his administrative remedies. The exhaustion requirement is a prerequisite to all prisoner claims, even if the remedy requested is not available in an administrative grievance proceeding. *Porter,* 534 U.S. at 524 (*citing Booth v. Churner,* 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Thus, the Court will dismiss plaintiff's claim against Bundrick for failure to exhaust his administrative remedies.

Alternatively, the Court will grant summary judgment for Bundrick because there are no genuine issues of material fact, and no rational juror could find for plaintiff. *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir.2005)(upholding grant of summary judgment on excessive force claim where plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, such that it will be impossible for a district court to determine whether the jury could reasonably find for plaintiff). Bundrick treated plaintiff for an alleged heart attack on October 17, 2002. Bundrick Decl., ¶¶ 4, 5; Silverberg Aff., Ex. A, pp. 9-10. Once plaintiff was informed he was not having a heart attack, he informed Bundrick that the real reason he wanted to see the medical staff was because he wanted a "feed in cell" order. Bundrick Decl., ¶ 6. Bundrick informed plaintiff this was not a proper use of emergency sick call. *Id.* Plaintiff then "fell down" and began shaking violently. *Id.* at ¶ 7. This activity ceased with the application of an ammonia inhalant. *Id.* Plaintiff was again warned about the proper use of emergency sick call and left the clinic without further incident. *Id.* at ¶ 9. Plaintiff subsequently filed a grievance regarding the medical care he received. Holohan Affirm., Ex. B. Specifically, he complained that the nurses were laughing at him and that Bundrick refused to issue him a "feed in cell" order. *Id.* Plaintiff did not allege any use of force in his October 17, 2002, grievance or his January 2, 2003, appeal. *Id.* In addition, just one day later, on October 18, 2002, plaintiff was seen by the medical staff complaining of injuries he sustained from a fall. Silverberg Aff., Ex. A, p. 10. Yet, plaintiff never complained about an assault by Bundrick which he now asserts occurred just the day before. In light of the lack of medical evidence and plaintiff's prior inconsistent statements, no rational

juror could find for plaintiff, thereby providing a second basis upon which to grant summary judgment for Burdick. Accordingly, the Court will grant defendants' motion for summary judgment as to this claim.

**b. March 14, 2003 Excessive Force Allegations**

**1. Poirier**

**\*13** Plaintiff's only allegation against CO Poirier is that he falsely accused plaintiff of stealing law library supplies, which lead to the assault and disciplinary proceedings (AC, ¶ 20). At his deposition, plaintiff testified that Poirier was not involved in the assault. Renelique Dep. 103:1-5. Further, the record demonstrates that Poirier was not involved in the disciplinary proceedings. Thus, even liberally construing the amended complaint, the only claim asserted against CO Poirier is that his allegations resulted in a retaliatory cell search.

A cell search, even a retaliatory cell search, is not actionable under section 1983. *See Salahuddin v. Mead,* 2002 WL 1968329, at \*5 (S.D.N.Y. Aug.26, 2002)("a cell search is different from the various administrative decisions that are actionable under [§ ] 1983 if they are retaliatory"); *Walker v. Keyser,* 2001 WL 1160588, at \*9 (S.D.N.Y. Oct.2, 2001)("even retaliatory cell searches are not actionable under § 1983."). Accordingly, defendant Poirier is entitled to summary judgment.

**2. Weeks, Pomainville, Perry and Wolford**

Plaintiff's own statements, or lack thereof, immediately following the alleged assault contradict his allegations in the amended complaint. Plaintiff's grievance, testimony at his disciplinary hearing and appeal statement all fail to mention this alleged assault. Plaintiff's own medical records fail to reveal any complaints to medical staff regarding an alleged assault nor do they reflect the need for any medical treatment for an alleged assault. It is only after two months had passed that the plaintiff first alleges an assault. Even that statement is inconsistent with plaintiff's new allegations in the amended complaint because, prior to this lawsuit, plaintiff never alleged that Perry or Wolford were involved with any of the events, let alone with an assault. Moreover, when the Inspector General's Office investigated the matter, it, too, concluded that plaintiff's allegations were unsubstantiated. Thus, no rational juror could conclude that plaintiff was assaulted.

Accordingly, defendants Weeks, Pomainville, Perry and Wolford are entitled to summary judgment.

**3. Armstrong**

Plaintiff alleges that Lieutenant Armstrong joined in the "injustice" by finding him guilty of violating prison rules (AC, ¶ 27). Liberally construing plaintiff's amended complaint, it appears he is attempting to allege a due process violation. Nonetheless, it is well established that time in SHU under thirty days does not implicate a liberty interest. *Sandin v. Conner,* 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). Plaintiff's four day "time-served" keeplock confinement fails to implicate a sufficient liberty interest to give rise to a due process violation claim.

Even if the four days in keeplock implicated a sufficient liberty interest, plaintiff's due process claim would still fail because he was afforded all of the process due. The Constitution only guarantees that prison inmates will "not ... be deprived of a protected liberty interest without due process of law." *Franco v. Kelly,* 854 F.2d 584, 587 (2d Cir.1988) *(quoting Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986)). As long as prison officials grant the inmate a hearing and an opportunity to be heard, the "filing of unfounded charges d[oes] not give rise to a per se constitutional violation actionable under section 1983." *Franco,* 854 F.2d at 587(*quoting Freeman,* 808 F.2d at 953).

**\*14** The key inquiry, in assessing an allegation that an inmate has been found guilty of false disciplinary charges, is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment. *Id.* An inmate charged with a violation must be given (1) advance written notice of the charges at least twenty-four hours before the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement by the factfinders as to the evidence relied on for their decision, and the reasons for the prison committee's action. *Wolff v. McDonnell,* 418 U.S. 539, 564-66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The plaintiff does not make any specific challenge to his disciplinary hearing. The record demonstrates that he was afforded notice and an opportunity to be heard. The record further demonstrates that he did not request any witnesses and was in fact, successful in proving that two of the three items were actually his. Finally, he was given a

written statement explaining the basis for hearing officer Armstrong's decision. Thus, plaintiff was afforded all the process due. Accordingly, defendant Armstrong is entitled to summary judgment.

#### 4. Inspector General Roy

Plaintiff alleges that Inspector General Richard Roy ("Roy") failed to investigate the alleged assault upon receipt of his letter complaint (AC, ¶ 35). Plaintiff's allegations fail to state a cause of action because he has no constitutional right to an investigation, and he has failed to establish the personal involvement of the Inspector General.

"There is ... no constitutional right to an investigation by government officials" ... "and 'no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved.' " *Lewis v. Gallivan,* 315 F.Supp.2d 313, 317 (W.D.N.Y.2004)(*quoting Stone v. Department of Investigation,* 1992 U.S. Dist. LEXIS 1120, 1992 WL 25202 (S.D.N.Y. Feb.4, 1992)) and (*quoting Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir.1985)). Thus, plaintiff has no cognizable claim alleging that Roy was under an obligation to investigate or prosecute his claims.

Further, to be liable under § 1983, a prison official must have some personal involvement because "[s]upervisor liability in a § 1983 action depends on a showing of some personal responsibility and cannot rest on respondeat superior." *Hernandez,* 341 F.3d at 144. Plaintiff has failed to establish Roy's personal involvement. While his letter complaint was received by Roy's office, there is no indication that Roy personally reviewed the complaint or was involved in the investigation. See Holohan Affirm., Ex. H. In fact, the thorough investigation was completed by Investigator Vacca who concluded that plaintiff's claims of excessive force were unsubstantiated for the same reasons discussed above. *Id.* Accordingly, defendant Richard Roy is entitled to summary judgment.

#### F. Deliberate Indifference Claims-Medical and Mental Health Needs

**\*15** The standard of deliberate indifference includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d

Cir.1994) (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.* An official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To establish the subjective component, Harvey must demonstrate that defendants "knew of and disregarded an excessive risk to [his] health or safety." *Farmer,* 511 U.S. at 837. Prison officials are not liable "if they responded reasonably to a known risk, even if the harm ultimately was not averted." *Id.* at 826; *see also Estelle v. Gamble,* 429 U.S. 97, 106-7, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(prisoner not entitled to treatment by every medical alternative as long as treatment is reasonable).

Negligence or medical malpractice is insufficient to support a claim of deliberate indifference. *See Hendricks v. Coughlin,* 942 F.2d 109, 113; *see also Estelle,* 429 U.S. at 105-06. Moreover, mere differences of opinion regarding medical treatment do not give rise to an Eighth Amendment violation. *Estelle,* 429 U.S. at 107. Thus, to the extent the plaintiff contests the diagnosis and treatment that he received, he does not state a valid claim of medical mistreatment under the Eighth Amendment.

At issue is whether the plaintiff's medical conditions are, as a matter of law, sufficiently serious to give rise to an Eighth Amendment claim. To survive a motion for summary judgment, the plaintiff must "come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (*quoting* Fed.R.Civ.P. 56(e)). The plaintiff has alleged that defendants were deliberately indifferent to his well being as evidenced by the treatment afforded to him for his medical and mental health needs.

Not all claims regarding improper medical care are constitutionally cognizable. The standard for Eighth Amendment violations contemplates "a condition of urgency" that may result in "degeneration" or "extreme pain." *Hathaway,* 37 F.3d at 66 (*quoting Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). "A prisoner who nicks himself shaving obviously does not have a constitutional right to cosmetic surgery. But if prison officials deliberately ignore the fact that a prisoner

2007 WL 1110913

has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Similar distinctions may be drawn with respect to other medical conditions.

**\*16** In an Eighth Amendment claim premised on the inadequacy of medical care provided to an inmate, the inmate must establish that the health care provider acted with deliberate indifference to a serious medical need of the inmate. *West v. Atkins,* 487 U.S. 42, 46, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Estelle,* 429 U.S. at 106-07; *Chance,* 143 F.3d at 702.

Plaintiff alleges that Doctors Silverberg and Nunez and Physician Assistant Nesmith were deliberately indifferent to his medical needs. Plaintiff must demonstrate that defendants Silverberg, Nunez and Nesmith were deliberately indifferent to a serious medical need. The "sufficiently serious" requirement "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway,* 37 F.3d at 66 (quotation marks and citation omitted). For purposes of this motion, defendants concede that plaintiff meets this standard with respect to his Hepatitis C. However, with respect to all other allegations of medical need, plaintiff cannot establish that they actually existed and/ or that they are sufficiently serious. It is evident that neither indigestion or dry skin are sufficiently serious to constitute a claim of cruel and unusual punishment. With respect to plaintiff's alleged physical ailments regarding his bizarre gait, head, neck and spine injuries and a lump on his abdomen, there is no medical evidence establishing their existence beyond plaintiff's complaints. In fact, Magistrate Judge Treece recently ruled that plaintiff "is indeed preoccupied with the existence of medical conditions, of which this Court has not received any evidence documenting." *Renelique v. David,* Case No. 9:03CV1145, p. 37 (9/30/05). With respect to plaintiff's back pain, plaintiff fails to allege that it was sufficiently severe. Thus, plaintiff fails to establish that he suffered from these ailments, let alone that defendants knew he suffered from them. *Lewis v. McGraw,* 2005 WL 3050306, at *8 (S.D.N.Y.2005). Therefore, he cannot establish the first prong of an Eighth Amendment claim.

To the extent plaintiff could satisfy the first prong of an Eighth Amendment claim, especially with respect to his Hepatitis C, he cannot establish deliberate indifference.

With respect to his Hepatitis C, both Dr. Silverberg and Dr. Nunez noted that the disease was mild and did not require any immediate treatment. It was the doctors' independent medical judgments that the disease be monitored. Plaintiff's disagreement with this course of treatment does not constitute deliberate indifference. *Chance,* 143 F.3d at 703. With respect to plaintiff's lower back pain, even if he could demonstrate that it was sufficiently serious, Dr. Silverberg treated the back pain by issuing a back brace. Finally, plaintiff's main complaint against PA Nesmith is that if PA Nesmith had examined him in another position, he would have discovered the lump on his abdomen. This allegation, at most, states a claim for medical malpractice. It is well settled that a claim of malpractice is insufficient to constitute deliberate indifference. *Id.* Accordingly, defendants Silverberg, Nunez and Nesmith are entitled to summary judgment.

### 3. Plaintiff's Mental Health Treatment was Proper

**\*17** Plaintiff alleges that he was denied proper mental health treatment while at Great Meadow in violation of the Eighth Amendment. "Undoubtedly, there are situations where a psychiatric condition can pose a risk of serious harm." *R.T. v. Gross,* 298 F.Supp.2d 289, 297 (N.D.N.Y.2003 *(citing Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000). It is undisputed that plaintiff suffers from a psychiatric illness. See Wurzberger Aff., ¶ 11. He was diagnosed at Great Meadow with a somatoform disorder, non-specific. *Id.* Plaintiff's condition while at Great Meadow was stable and not sufficiently serious to trigger the Eighth Amendment. In addition, plaintiff was properly treated and cannot demonstrate any deliberate indifference by defendants Dr. Wurzberger and Ms. Kim.

After reviewing plaintiff's mental health records, no rational juror could conclude that the Eighth Amendment was violated. All plaintiff alleges is that he should have been provided more supportive counseling and that Ms. Kim did not see him when she was on vacation. The record clearly demonstrates that even if Ms. Kim took a vacation, she still provided the recommended once-a-month supportive counseling. See Wurzberger Aff., Ex. A., pp. 416-23. Moreover, plaintiff fails to provide any evidence that he suffered any acute episodes as a result of a lack of supportive counseling. Plaintiff cannot demonstrate that he suffered any acute episodes while at Great Meadow. Therefore, he cannot establish that his

psychiatric condition was sufficiently severe. *R.T., 298 F.Supp.2d at 297*.

In any event, plaintiff cannot demonstrate that defendants were deliberately indifferent to his psychiatric needs. The evidence in the record is that neither Dr. Wurzberger nor Ms. Kim ignored or otherwise callously disregarded plaintiff's condition. Dr. Wurzberger observed plaintiff on three occasions. At no time did Dr. Wurzberger believe plaintiff to be in acute distress or in need of even any psychotropic medications. Wurzberger Aff., ¶¶ 8, 10. In addition, plaintiff expressed a desire not to take any medications. *Id.* at ¶ 10. Similarly, Ms. Kim provided supportive counseling once a month. *Id.* at Ex. A, pp. 216-23. All of Ms. Kim's observations noted that plaintiff was doing well and not in acute distress. *Id.;* see also Kim Decl., ¶ 7. Plaintiff's chief complaint to Ms. Kim was a desire to be single bunked and to be eligible for a transfer out of Great Meadow. Kim Decl., ¶¶ 9, 10. Ms. Kim requested a single cell for plaintiff and was successful in working with plaintiff to further stabilize his mental health, making him eligible for a transfer out of Great Meadow. *Id.* Thus, no reasonable juror could conclude that defendants were deliberately indifferent to plaintiff's psychiatric needs. Accordingly, defendants Wurzberger and Kim are entitled to summary judgment.

### G. A.D.A. Claims

In liberally construing plaintiff's amended complaint, it appears he contends that he is disabled insofar as he is limited in the major life activity of walking. He further claims that his amended complaint explicitly names defendants Duncan and Plescia in the claim for damages under the ADA. Plaintiff does not specify whether he seeks relief under Title I or II of the ADA. However, inasmuch as Title I prohibits discrimination in employment and plaintiff was not defendants' employee, it is assumed that plaintiff brings this claim under Title II.

**\*18** Plaintiff alleges that defendants Duncan and Pleascia₁ violated the Americans with Disabilities Act ("ADA") by keeping him in a facility that has stairs. Plaintiff alleges that his inability to climb stairs prevented him from attending the mess hall and the law library. Plaintiff also alleges that defendant Maguire, despite knowing of his walking impairments, ordered him to the mess hall (AC, ¶¶ 18-19). As a result of this order, plaintiff alleges that he fell down the stairs (AC, ¶ 19).

### Subject Matter Jurisdiction

The Supreme Court has held that suits in federal court to recover money damages from a state for failure to comply with Title I of the ADA are barred by the Eleventh Amendment. *Board of Trustees v. Garrett,* 531 U.S. 356, 374, n. 9, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The Court found that any abrogation of Eleventh Amendment immunity that Congress may have intended was an invalid exercise of power under § 5 of the Fourteenth Amendment because the legislation was not congruent and proportional to the injury. The Second Circuit has held that a private suit for money damages under Title II of the ADA may not be maintained against state officials acting in their individual capacities. *Garcia v. SUNY Health Sciences Center of Brooklyn,* 280 F.3d 98, 107 (2d Cir.2001). Thus, the ADA claims against defendants Duncan, Plescia and Maguire in their individual capacities should be dismissed.

To the extent plaintiff names defendants Duncan, Plescia and Maguire in their official capacity, post-*Garcia* district courts have held that individuals cannot be named in their official capacity either, noting that public entities could, and should, be sued directly. *Carrasquillo v. City of New York,* 324 F.Supp.2d 428, 441 (S.D.N.Y.2004) (citations omitted). In any event, the allegations set forth in the complaint with respect to the ADA claim are devoid of any claim that the individual defendants' actions were motivated by any such discriminatory animus or ill will due to plaintiff's alleged disability. *Garcia,* 280 F.3d at 111-12. Thus, defendants Duncan, Plescia and Maguire are entitled to summary judgment.

The record demonstrates that plaintiff's alleged limitations are not substantial. Other judges in this district have already concluded that plaintiff's litany of alleged physical ailments do not necessarily constitute a "disability." *See Renelique v. Goord,* No. 9:03-CV-525, Filing No. 80, p. 37 (Mag. Judge DiBianco Sept. 19, 2005) (attached as Exhibit L to Holohan Affirm). Magistrate Judge Treece reached the same conclusion. *See Renelique v. David,* No. 9:03-CV-1145, (Filing No. 70), p. 47 (Sept. 30, 2005)(attached as Exhibit M to Holohan Affirm.). These legal conclusions are supported by the medical records. In fact, the medical personnel at Great Meadow informed the Superintendent that there was no organic reason for plaintiff's bizarre gait and that his walking "problems" were the manifestation of his

delusional disorder. See Holohan Affirm., Ex. D. Plaintiff cannot demonstrate that he is disabled under the ADA. Therefore, defendants' motion for summary judgment will be granted as to defendants Duncan, Plescia and McGuire.

**\*19** Having addressed all of plaintiff's claims and having found that summary judgment is proper as to all defendants, the Court will grant defendants' motion for summary judgment. A separate order will be entered in accordance with the memorandum opinion.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 1110913

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Robinson v. Delgado, Not Reported in F.Supp. (1998)

1998 WL 278264

Case 9:17-cv-00912-CFH    Document 56    Filed 12/20/18    Page 57 of 58

1998 WL 278264
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Anthony ROBINSON, Plaintiff,

v.

Jane DELGADO, Hearing Officer and
Lieutenant; and Donald Selsky, Director of
Inmate Special Housing Program, Defendants.

No. 96–CV–169 (RSP/DNH).
|
May 22, 1998.

**Attorneys and Law Firms**

Anthony Robinson, Veterans Shelter, Brooklyn, for
Plaintiff, Pro Se.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Attorney for Defendants, Albany, Ellen Lacy
Messina, Esq., Assistant Attorney General, of Counsel.

ORDER

POOLER, D.J.

**\*1** Anthony Robinson, a former inmate incarcerated
by the New York State Department of Corrections
("DOCS"), sued two DOCS employees, alleging that
they violated his right to due process in the course
of a disciplinary proceeding and subsequent appeal.
On September 9, 1997, defendants moved for summary
judgment. Defendants argued that plaintiff failed to
demonstrate that the fifty days of keeplock confinement
that he received as a result of the hearing deprived
him of a liberty interest within the meaning of the Due
Process Clause. Plaintiff did not oppose the summary
judgment motion, and Magistrate Judge David N. Hurd
recommended that I grant it in a report-recommendation
filed April 16, 1998. Plaintiff did not file objections.

Because plaintiff did not file objections, I "need only
satisfy [myself] that there is no clear error on the face
of the record in order to accept the recommendation."
Fed.R.Civ.P. 72(b) advisory committee's note. After
reviewing the record, I conclude that there is no clear
error on the face of the record. After being warned

by defendants' motion that he must offer proof in
admissible form that his disciplinary confinement imposed
an "atypical and significant hardship on the inmate
in relation to the ordinary incidents of prison life,"
Robinson failed to offer any such proof. *Sandin v. Conner,*
515 U.S. 472, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418
(1995). Consequently, he cannot maintain a due process
challenge. *Id.* Therefore, it is

ORDERED that the report-recommendation is
approved; and it is further

ORDERED that defendants' motion for summary
judgment is granted and the complaint dismissed; and it
is further

ORDERED that the Clerk of the Court serve a copy of
this order on the parties by ordinary mail.

HURD, Magistrate J.

REPORT—RECOMMENDATION

The above civil rights action has been referred to the
undersigned for Report and Recommendation by the
Honorable Rosemary S. Pooler, pursuant to the local
rules of the Northern District of New York. The plaintiff
commenced the above action pursuant to 42 U.S.C. § 1983
claiming that the defendants violated his Fifth, Eighth,
and Fourteenth Amendment rights under the United
States Constitution. The plaintiff seeks compensatory and
punitive damages.

Presently before the court is defendants' motion for
summary judgment pursuant to Fed R. Civ. P. 56.
However:

> When a motion for summary
> judgment is made and supported as
> provided in this rule, an adverse
> party may not rest upon the mere
> allegations or denials of the adverse
> party's pleading, but the adverse
> party's response, by affidavits or
> as otherwise provided in this rule,
> must set forth specific facts showing
> that there is a genuine issue for
> trial. If the adverse party does not

so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P 56(e).

In addition, "[f]ailure to file any papers as required by this rule shall, unless for good cause shown, be deemed by the court as consent to the granting or denial of the motion, as the case may be." L.R. 7.1(b)(3).

**\*2** The defendants filed their motion on September 9, 1997. The response to the motion was due on October 23, 1997. It is now five months beyond the date when the plaintiff's response was due, and he has failed to file any papers in opposition to defendants' motion.

Therefore, after careful consideration of the notice of motion, affirmation of Ellen Lacy Messina, Esq., with exhibits attached, and the memorandum of law; and there being no opposition to the motion; it is

RECOMMENDED that the motion for summary judgment be GRANTED and the complaint be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(l), the parties have ten days within which to file written objections to the foregoing report. *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696(1992). Such objections shall be filed with the Clerk of the Court with a copy to be mailed to the chambers of the undersigned at 10 Broad Street, Utica, New York 13501. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(l); Fed.R.Civ.P. 72, 6(a), 6(e); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of HHS,* 892 F.2d 15, 16 (2d Cir.1989); and it is

ORDERED, that the Clerk of the Court serve a copy of this Order and Report–Recommendation, by regular mail, upon the parties to this action.

**All Citations**

Not Reported in F.Supp., 1998 WL 278264

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.