**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

DEREK A. HEYLIGER,

                           Plaintiff,

        v.

ANDREW CYMBRAK, et al.,

                         Defendants.

No. 9:17-CV-912
(DNH/CFH)

─────────────────────────────

**APPEARANCES:**                                   **OF COUNSEL:**

Derek A. Heyliger
12-B-0269
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
Plaintiff pro se

Attorney General for the                           WILLIAM A. SCOTT, ESQ.
  State of New York                              Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Derek A. Heyliger ("plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

defendants, correction officer ("C.O.") Andrew Cymbrack ("Cymbrack"), C.O. Kyle

───────────────────

[1]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Guynup ("Guynup"), C.O. Christopher Lagree ("Lagree"), C.O. A. Mussen ("Mussen"), C.O. Kevin Wilcox ("Wilcox"), C.O. Liam Mahoney ("Mahoney"), C.O. William Perry ("Perry"), C.O. Lafountain ("Lafountain"), DOCCS Central Officer Review Committee ("CORC") Acting Commissioner of Corrections Anthony Annucci ("Annucci"), DOCCS CORC Director Inmate Grievance Program ("IGP") Karen Bellamy ("Bellamy"),[2] DOCCS CORC IGP Coordinator Rebecca Loren ("Loren"), DOCCS CORC IGP Coordinator Jason Effman ("Effman"), and DOCCS CORC IGP Coordinator Charles Simpson ("Simpson")—who, at all relevant times were employed by DOCCS—and New York State Inspector General Catherine Leahy Scott ("Leahy Scott"), violated his constitutional rights under the First and Eighth Amendments.  See Dkt. No. 1 ("Compl."). At all relevant times, plaintiff was incarcerated at Clinton Correctional Facility ("Clinton").

After the Court's initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the following claims remain pending: (1) plaintiff's Eighth Amendment excessive force claim against Cymbrak, Guynup, Lagree, Mussen, Wilcox, Mahoney, Perry, and Lafountain based on an alleged October 28, 2015 use of force; (2) plaintiff's Eighth Amendment failure to protect claims against Annucci, Bellamy, Loren, Effman, Simpson, and Leahy Scott; (3) plaintiff's Eighth Amendment conditions of confinement claim against Lafountain concerning plaintiff's kosher food; (4) plaintiff's racial discrimination claim against Lagree relating to the October 28, 2015 incident; and (5) plaintiff's First Amendment retaliation claims against (a) Annucci, Bellamy, Loren, Effman, Simpson, and Leahy Scott based on an alleged retaliatory transfer; (b) Cymbrak, Guynup, Lagree, Mussen, Wilcox, Mahoney, Perry,

---

[2]  The proper spelling is "Bellamy," not "Bellemy."  See Dkt. No. 72-10.  The Clerk of the Court is respectfully directed to modify the docket to reflect this change.

and Lafountain alleging that the October 28, 2015 use of force was done in retaliation for plaintiff's filing of a lawsuit relating to a December 6, 2013 incident; and (c) additional retaliation claims against Lafountain alleging food tampering, destruction of property, and falsification of property transfer documents.  See Dkt. No. 7 at 44.[3]

Presently pending before the Court are defendants' partial motion for summary judgment, see Dkt. No. 72, and plaintiff's cross motion for partial summary judgment. See Dkt. No. 78.  In his memorandum of law in support of his cross motion for partial summary judgment, plaintiff also requests that the Court dismiss several of his claims from the action.  See Dkt. No. 78-1 at 4, 10.  As explained below, in light of plaintiff's stipulation, and as limited by the parties' motions, the sole issue is whether either party is entitled to partial summary judgment as to plaintiff's Eighth Amendment conditions of confinement claim against Lafountain regarding his food.  For the reasons that follow, it is recommended that defendants' motion for partial summary judgment be granted and that plaintiff's cross motion for partial summary judgment be denied.  It is further recommended that, pursuant to plaintiff's stipulation, the following claims also be dismissed: (1) plaintiff's First Amendment retaliation claims against Officers Cymbrak, Guynup, Lafountain, Lagree, Mahoney, Mussen, Perry, and Wilcox insofar as they are based on the October 28, 2015 alleged use of excessive force; (2) all claims against Annucci, Bellamy, Effman, Loren, Simpson, and Leahy Scott; and (3) plaintiff's Eighth Amendment excessive force claim against officers Mahoney and Lafountain.

---

[3]  Upon its initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court dismissed numerous other claims and defendants from the action without prejudice.  See Dkt. No. 7.  Plaintiff did not seek to file an amended complaint in this action.

## I. Background

## A. Relevant Facts

Plaintiff is an African-American Jewish inmate who receives meals in accordance with the kosher cold alternative diet ("CAD").  See Compl. at 67 ¶ 214; see also Dkt. No. 78-1 at 6-8.  According to plaintiff, the "Jewish kosher tray meal bread is always suppose [sic] to arrive at plaintiffs [sic] cell wrapped in plastic suram [sic] wrap which gets wrapped at the messhall [sic] before being placed in plaintiff's kosher tray," and "it is standard []DOCCS policy that security staff are suppose [sic] to allow plaintiff to personally unwrap his own bread from the suram [sic] wrap."  Comp. at 67-68 ¶ 215, 68 ¶ 216.  Plaintiff alleges that, on three occasions in February 2016 while he was housed in the special housing unit ("SHU") at Clinton, "Lafountain deliberately defied policy" when delivering plaintiff's food tray by "causing [the] bread to arrive unwrapped in the tray" and "served plaintiff his kosher bread unwrapped outside of his presence several times" "with malicious intent to cause plaintiff physical injury . . . with the purpose of prompting plaintiffs [sic] exposure to hazardous bacteria, and contamination."  Id. at 68 ¶¶ 217, 219, 70 ¶ 227.  In particular, plaintiff states that, "on three consecutive occasions (when defendant Lafountain brought plaintiff his kosher tray)," he "noticed that there appeared to be curled up pubic[-]like hair fibers located in [his] bread and on the inner side tip of [his] kosher tray."  Id. at 67 ¶ 214, 69 ¶ 222.  He also states that his "bread constantly kept arriving soak and wet, leading plaintiff to believe that . . . Lafountain was placing spit bodily fluids in plaintiffs [sic] bread . . . ."  Id. at 68 ¶ 219.  Plaintiff contends that, by serving his bread unwrapped, Lafountain "exposed plaintiffs [sic] Jewish kosher tray bread to contamination . . . causing [the] bread to arrive

unwrapped in the tray and exposed to germs, hair fibers, and bacteria," which "left plaintiff exposed to [tuberculosis.]" Id. at 68 ¶¶ 217-18, 70 ¶ 227. Plaintiff notes that, "[o]n March 31, 2016 (after plaintiff's February 25, 2016 transfer from [Clinton] to Southport Correctional Facility . . . plaintiff was tested by medical staff . . . for tuberculosis" and that the "test results came back positive to [tuberculosis] exposure." Id. at 69 ¶¶ 224, 225.

## B. Present Motions

### 1. Defendants' Motion for Partial Summary Judgment

Defendants move for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 as to plaintiff's (1) First Amendment retaliation claims against Cymbrak, Guynup, Lagree, Mussen, Wilcox, Mahoney, Perry, and Lafountain to the extent those claims are based on the alleged use of force on October 28, 2015 in retaliation for plaintiff's filing a prior lawsuit relating to a December 6, 2013 incident; (2) First and Eighth Amendment claims against Annucci, Bellamy, Loren, Effman, Simpson, and Leahy Scott; and (3) Eighth Amendment conditions of confinement claim against Lafountain regarding his food. See id. Defendants do not request summary judgment with respect to plaintiff's (1) Eighth Amendment excessive force claims, (2) racial discrimination claim against Lagree, or (3) First Amendment retaliation claims against Lafountain concerning food tampering, destruction of property, and falsification of property transfer documents. See Dkt. No. 72; see also Dkt. No. 72-2 at 5.

### 2. Plaintiff's Cross Motion for Partial Summary Judgment

5

Plaintiff filed a response to defendants' partial motion for summary judgment which he styled as a "cross motion for summary judgment" in which he requests "an order granting . . . the commencement of a jury trial . . . concerning" his (1) "Eighth Amendment [conditions of confinement] claim against . . . Lafountain regarding his food"; (2) Eighth Amendment "excessive force claims against . . . Cymbrak, Guynup, Lagree, Mussen, Perry, and Wilcox" only; (3) First Amendment "retaliation [claim against] Lafountain for destruction of [his] property"; and (4) "racial discrimination claim against . . . Lagree." Dkt. No. 78. He also requests that the Court "grant [his] Eighth Amendment claim against . . . Lafountain regarding his food." Dkt. No. 78-1 at 10.

## C. Parties' Briefing on the Present Motions

### 1. Defendants' Memorandum of Law

As relevant here, defendants argue that that plaintiff has failed to establish either the objective or subjective element to support an Eighth Amendment conditions of confinement claim against Lafountain based on food tampering or contamination, and that plaintiff's claim in this regard is conclusory and based on mere speculation. See Dkt. No. 72-2 at 16-17. First, defendants contend that plaintiff did not suffer any actual injury as a result of the alleged food tampering sufficient to sustain an Eighth Amendment conditions of confinement claim. See id. at 17. In support of this contention, defendants offer plaintiff's deposition testimony in which plaintiff acknowledged that he never tested positive for an active case of tuberculosis:

> Q: You make the allegation, or complaint, regarding tuberculosis. We haven't been informed that—was that a false positive for tuberculosis, or was it an accurate positive?"

A: Well, they said that I was exposed to tuberculosis, which means that my body have fought off the—the actual—like it wasn't—it wasn't that I had T.B., but I was exposed to it, some type of way.

Q: So, just so I understand, there was a question about being exposed to [tuberculosis], but you never were actually found to have tuberculosis.

A: Exactly

Q: Who was it that told you that you had been exposed to tuberculosis?

A: A nurse at south—a nurse at Southport Correctional, after they had did a test—they test me for T.B.  They . . . told me you've been exposed to T.B. . . . .

Q: So, what did—did the nurse explain to you what she meant by being exposed to it, as compared to actually having tuberculosis?

A: I just know that they—she said something about the exposure isn't having tuberculosis.  It's about my body—it's my body's ability to fight off the disease, the exposure.  So, if my body and my immune system wasn't as strong as it was, then I probably would have been, you know, not just exposed to it, that it wasn't—just not in my system.  They basically saying traces—that I was exposed to it and that my body was able to fight it off.  My immune system was able to fight it off, but they still wanted to give me medication, to make sure that it didn't turn into anything.  So, I had to take these pills for—twice a week for nine months.  Okay.

Dkt. No. 72-5 at 248-49, 250-51.

Moreover, defendants point out that plaintiff "did not witness Lafountain open his bread or otherwise interfere with his bread."  Dkt. No. 72-2 at 16.  In support of this contention, defendants reference plaintiff's deposition testimony in which he stated that Lafountain

> unwrapped [the bread] before he even c[a]me[] to give the
> food out . . . So, he[] pass[ed] me the tray and the bread
> [wa]s already in it, unwrapped . . . So, when I unpop the tray
> in the morning time, which is . . . like a Styrofoam tray,
> boom, when I unwrap it the bread is already unwrapped and
> I didn't get to see him unwrap the bread. That means [he]
> did it before [he] even came on the gallery[] to start serving
> us our trays.

Dkt. No. 72-5 at 207. In addition, defendants observe that plaintiff acknowledged at his

deposition that Lafountain was not the only individual to handle his food tray prior to

plaintiff's meals being served. See Dkt. No. 72-2 at 17. In particular, defendants note

plaintiff's deposition testimony in which he explained that civilians in the cafeteria

handled his food before it was sent to his cell and that he did not know whether anyone

handled his food between the kitchen and the time Lafountain received and delivered it

to him. See Dkt. No. 72-5 at 252-55.

### 2. Plaintiff's Memorandum of Law

### a. Plaintiff's Arguments in Support of Partial Summary Judgment

With respect to his Eighth Amendment claim against Lafountain, plaintiff

contends that "there remains a heated dispute pertaining to a material fact concerning

[DOCCS] food handling policy and practices concerning whether . . . Lafountain was or

was not mandated to unwrap [p]laintiff's bread directly in front of him," but argues that

"there is no material fact in dispute regarding whether or not . . . Lafountain tampered

with . . . [p]laintiff's food causing [p]laintiff's exposure to tuberculosis." Dkt. No. 78-1 at

5, 8. Plaintiff also argues, for the first time in his cross motion, that Lafountain

"deliberate[ly] fail[ed] to inspect [his] food in [p]laintiff's personal presence to prevent

exposure to germs and potentially dangerous and deadly bacteria [p]laintiff stood a high

risk of being exposed to, which resulted in injury to [p]laintiff." Id. at 9. Plaintiff observes that Lafountain's declaration in support of defendants' motion for partial summary judgment "does not deny tampering with [p]laintiff's food or failing to follow Jewish CAD food handling procedures." Id. at 8; see Dkt. No. 72-17 at 1-2.

Further, plaintiff contends that, "[c]ontrary to [d]efendants['] claims . . . [he] can prove by way of material fact that he did test positive for tuberculosis as a result of . . . Lafountain's food tampering." Dkt. No. 78-1 at 8. In support of this contention, plaintiff references exhibit 3 to his cross motion, which is a letter from Dr. Enrique Putsztyn ("Dr. Putsztyn") at Upstate Correctional Facility ("Upstate") detailing the findings of plaintiff's chest x-ray performed in January 2017. See Dkt. No. 78-2 at 6. Dr. Putsztyn's letter states "PORTABLE CHEST," "INDICATION: POSITIVE TEST FOR TB," "FINDINGS: The heart is not enlarged[, n]o cardiomediastinal, pleural, pulmonary or acute bony abnormality is identified," "IMPRESSION: CHEST X-RAY WITHIN NORMAL LIMITS FOR AGE." Id. (emphasis in original). Moreover, plaintiff references exhibit 2 to his cross motion, which is his two-page DOCCS "Medical Problem List." See Dkt. No. 78-2 at 3-4. As relevant here, plaintiff's Medical Problem List indicates that a QuantiFERON[4] test came back positive for tuberculosis on April 2, 2016, at Southport; that a "PREVENTATIVE" prescription for tuberculosis was initiated on May 25, 2016, at Great Meadow Correctional Facility ("Great Meadow"); and that plaintiff completed his preventative prescription on February 17, 2017, while at Upstate. Id. at 3, 4.

---

[4] QuantiFERON is a blood test for diagnosing latent mycobacterium tuberculosis infection. See Guidelines for Using the QuantiFERON®-TB Test for Diagnosing Latent *Mycobacterium tuberculosis* Infection, CDC, https://www.cdc.gov/mmwr/preview/mmwrhtml/rr5202a2.htm (last visited Dec. 12, 2019).

**b. Plaintiff's Stipulation to Dismissal of Certain Claims**

In his memorandum of law, plaintiff "agrees by way of stipulation to dismissal of[ his:] (1) First Amendment retaliation claim[s] against . . . Cymbrak, Guynup, Lafountain, Lagree, Ma[h]oney, Mussen, Perry and Wilcox; (2) claims against Annucci, Bellamy, Effman, Loren, [Leahy] Scott[,] and Simpson[;] and[] (3) excessive force claim against . . . Ma[h]oney and Lafountain." Dkt. No. 78-1 at 4. Plaintiff does not object to summary judgment being granted in defendants' favor as to those claims. However, plaintiff limits his stipulation to the dismissal of his First Amendment retaliation claims insofar as they "pertain[ to] the October 28, 2015 retaliatory assault claim," which does not include his additional retaliation claims against Lafountain based on his allegations of food tampering, property destruction, and falsification of documents. Id. at 10; see Compl. at 72-78.

In support of his request for dismissal of the foregoing claims, plaintiff states that he

> "does not believe he can prove by way of material facts that there is any causal connection between the alleged protected activity, i.e. the filing of a suit related to the December 6, 2013, use of force, and the alleged adverse action, the use of force on October 28, 2015 against defendants Officers Cymrak, Guynup, Lafountain, Lagree, Ma[h]oney, Mussen, Perry[,] and Wilcox, to substantiate plaintiff's retaliation claim in this litigation."

Dkt. No. 78-1 at 4. Further, plaintiff states that he "does not believe he can prove by way of material facts his claims that defendants Annucci, Bellamy, Effman, Loren, [Leahy] Scott, and Simpson played a role in [his] transfer to Clinton, the act that allegedly violated his Eighth and First Amendment rights." Id. Finally, plaintiff states that he "does not believe he can prove by way of material facts that [d]efendants

Ma[h]oney, and Lafountain had any personal involvement in the October 28, 2015 excessive force claim in this action." Id.  He therefore requests that the Court dismiss these claims.  See id. at 4, 10.

### 3. Defendants' Reply

In reply to plaintiff's cross motion/opposition, defendants aver that plaintiff fails to present "evidence, admissible or otherwise, to demonstrate that . . . Lafountain disregarded a known risk to [p]laintiff's health" or "tampered with [p]laintiff's food."  DKt. No. 79 at 6.  Rather, defendants contend, plaintiff proffers only "[c]onclusory allegations of food tampering," which are "insufficient to sustain [his] Eighth Amendment conditions of confinement claim."  Id.  Moreover, defendants posit that plaintiff's chest x-ray and Medical Problem List establish that plaintiff never "actually contract[ed] tuberculosis" and, therefore, plaintiff did not "suffer[] from a serious medical condition."[5]  Id.

### III. Discussion[6]

---

[5] In reply to plaintiff's partial motion for summary judgment, defendants attempt to characterize plaintiff's filing as solely an opposition to their motion for partial summary judgment, contending that, "[t]hough captioned as a '[c]ross [m]otion[,]' [p]laintiff's opposition papers do not seek any affirmative relief."  Dkt. No. 79 at 4 n.1.  The undersigned rejects this characterization.  Construing plaintiff's submission liberally, plaintiff seeks affirmative relief on this claim insofar as he requests that the Court "grant [his] Eighth Amendment claim against . . . Lafountain regarding his food."  Dkt. No. 78-1 at 10.  In an abundance of caution, the undersigned will also assess plaintiff's submission in the alternative, to the extent it may be construed as an opposition to defendant's partial motion for summary judgment as to his Eighth Amendment claim against Lafountain.  However, to the extent plaintiff requests that the matter "commence[] to a jury trial" with respect to his (1) Eighth Amendment excessive force claims against Cymbrak, Guynup, Lagree, Mussen, Perry, and Wilcox; (2) First Amendment retaliation claim against Lafountain to the extent that claim is not based on the alleged October 28, 2015 assault; and (3) racial discrimination claim against Lagree, plaintiff advances no argument and offers no evidence as to why summary judgment is warranted, or even sought; therefore, the undersigned will not construe plaintiff's submission as seeking summary judgment as to those claims.  Dkt. No. 78 at 1.

[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

## A. Legal Standard

Summary judgment may be granted only if the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists." Price v. Oropallo, No. 9:13-CV-0563 (GTS/TWD), 2014 WL 4146276, at *4 (N.D.N.Y. Aug. 19, 2014) (citing Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006)). Facts are material if they may affect the outcome of the case as determined by substantive law. See Anderson, 477 U.S. at 248. A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.1997).

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. See Salahuddin, 467 F.3d at 272-73. The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. See Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (internal quotation marks and citation omitted). A plaintiff's verified complaint is to be treated as an affidavit.[7] See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ."). "To satisfy Rule 56(e), affidavits must be based upon concrete particulars, not conclusory allegations." Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (internal quotation marks and citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (brackets omitted) (quoting Anderson, 477 U.S. at 252).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations,

---

[7] Plaintiff's complaint in this case was properly verified. See Compl. at 97.

> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by *pro se* litigants, and that *pro se* status does not
> exempt a party from compliance with relevant rules of
> procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a

court is obligated to construe his pleadings liberally.") (internal quotation marks and

citations omitted).

When considering cross-motions for summary judgment, a court "must evaluate

each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration."  Hotel

Employees & Rest. Employees Union, Local 100 of New York, New York & Vicinity, AFL

CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir.2002)

(quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.1993)).  "[N]either

side is barred from asserting that there are issues of fact, sufficient to prevent the entry

of judgment, as a matter of law, against it [and] a district court is not required to grant

judgment as a matter of law for one side or the other."  Heublein, 996 F.2d at 1461.


**B. Plaintiff's Stipulation of Dismissal**

As stated above, plaintiff requests that the following of his claims be dismissed:

(1) First Amendment retaliation claims against Cymbrak, Guynup, Lafountain, Lagree,

Mahoney, Mussen, Perry, and Wilcox; (2) claims against Annucci, Bellamy, Effman,

Loren, Simpson, and Leahy Scott; and (3) excessive force claim against  Mahoney and

Lafountain.  <u>See</u> Dkt. No. 78-1 at 4.  Plaintiff does not object to summary judgment being granted in defendants' favor as to those claims.  However, plaintiff limits his stipulation to the dismissal of his First Amendment retaliation claims insofar as they "pertain[ to] the October 28, 2015 retaliatory assault claim," which does not include his additional retaliation claims against Lafountain based on his allegations of food tampering, property destruction, and falsification of documents.  <u>Id.</u> at 10; <u>see</u> Compl. at 72-78.  Further, although plaintiff does not specify whether he seeks dismissal of his claims with or without prejudice, out of an abundance of caution, the Court will consider whether dismissal without prejudice is appropriate under the factors set forth in <u>Zagano v. Fordham Univ.</u>, 900 F.2d 12, 14 (2d Cir. 1990).

The first factor, "the plaintiff's diligence in bringing the motion," <u>Zagano</u>, 900 F.2d at 14, does not support dismissal without prejudice, as plaintiff waited to seek dismissal of the above-mentioned claims in response to defendants' motion for partial summary judgment, and there does not appear to be any reason why he was unable to request dismissal any earlier, which indicates a lack of diligence.  <u>See</u> <u>Rayburn v. CSX Transportation Corp.</u>, 8:17-CV-48 (LEK/CFH), 2017 WL 4990631, at *3 (N.D.N.Y. Oct. 31, 2017).  The second factor, "any 'undue vexatiousness' on plaintiff's part," <u>Zagano</u>, 900 F.2d at 14, also does not support dismissal without prejudice.  Plaintiff admitted, in outlining his reasoning for requesting dismissal, that the claims he now requests be dismissed have no merit, and it appears that he only chose to maintain those claims until it became clear, upon defendants' motion for summary judgment, that he could not prove them.  This indicates that plaintiff is being unduly vexatious and is requesting dismissal to avoid an adverse decision.  <u>See</u> <u>Rayburn</u>, 2017 WL 4990631, at *3.  Factor

three, "the extent to which the suit has progressed," <u>Zagano</u>, 900 F.2d at 14, also weighs against dismissal without prejudice.  Plaintiff waited to request dismissal of his claims until after the completion of discovery and the filing of defendants' motion for partial summary judgment.  <u>See</u> <u>Pace v. Southern Express Co.</u>, 409 F.2d 331, 334 (7th Cir. 1969) (dismissal without prejudice properly denied where discovery considerably advanced and the defendant's motion for summary judgment pending); <u>Lopez v. Whitmore</u>, No. 9:13-CV-952 (BKS/ATB), 2015 WL 4394604, at *7-8 (N.D.N.Y. July 16, 2015) (holding that it would be unfair to allow the plaintiff to voluntarily withdraw because, among other things, the defendants had filed a summary judgment motion supported by numerous affidavits and exhibits).  The fourth factor, "the duplicative expense of relitigation," <u>Zagano</u>, 900 F.2d at 14, does not appear to weigh against dismissal without prejudice, as "[t]he mere prospect of a second litigation is insufficient to rise to the level of legal prejudice."  <u>Morehouse v. Clifford</u>, No. 14-CV-1359 (TJM/RFT), 2016 WL 51254, at *3 (N.D.N.Y. Jan. 4, 2016) (internal quotation marks and citation omitted).  Finally, the fifth factor, "plaintiff's explanation for the need to dismiss," <u>Zagano</u>, 900 F.2d at 14, weighs against dismissal without prejudice.  As discussed in subsection II.C.2.b., <u>supra</u>, plaintiff explicitly requests dismissal of his claims because he does not believe he can prove them and implicitly admits that those claims are meritless.  <u>See</u> Dkt. No. 78-1 at 4.  Accordingly, upon careful consideration of the <u>Zagano</u> factors, the undersigned concludes that dismissal without prejudice is not appropriate here.

Therefore, it is recommended that the following claims be dismissed with prejudice: (1) plaintiff's First Amendment retaliation claims against Cymbrak, Guynup,

Lafountain, Lagree, Mahoney, Mussen, Perry, and Wilcox insofar as those claims are based on the alleged October 28, 2015 assault; (2) all claims against Annucci, Bellamy, Effman, Loren, Simpson, and Leahy Scott; and (3) plaintiff's excessive force claims against officers Mahoney and Lafountain.  See McCray v. City of New York, No. 03-CV-10080 (DAB), 2007 WL 4352748, at *28 (S.D.N.Y. Dec. 11, 2007) ("In their [m]emorandum of [l]aw in [o]pposition to [d]efendant's [m]otion to [d]ismiss, [the p]laintiffs stipulate that claims for assault and battery and harassment may be dismissed . . . .  The [c]ourt hereby dismisses these claims with prejudice." (capitalization omitted)); see also Thorne v. Cuevas, No. 3:09-CV-1716 (SRU), 2012 WL 1050056, at *4 (D. Conn. Mar. 28, 2012) (dismissing claims which the plaintiff, in his memorandum of law, stated that he no longer wished to pursue and, with respect to which, he did not object to the court granting summary judgment in favor of defendants).

### C. Eighth Amendment Conditions of Confinement

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test."  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted).  Thus, "a prisoner may prevail only where he proves both an objective element—that the prison officials' transgression was sufficiently serious—and

a subjective element—that the officials acted, or omitted to act, with a sufficiently culpable state of mind . . . ." Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002) (internal quotation marks and citations omitted).

The objective prong can be satisfied where the plaintiff pleads "conditions [that] either alone or in combination, pose an unreasonable risk of serious damage to [the inmate's] health." Darnell v. Pineiro, 849 F.3d 17, 30 (2d Cir. 2017) (quoting Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)). There is no "static test" to determine whether or not an alleged deprivation is sufficiently serious to satisfy the objective prong. Id. (internal quotation marks omitted). Rather, courts must determine whether the conditions violate "contemporary standards of decency." Id. (quoting Blissett v. Coughlin, 66 F.3d 531, 537 (2d Cir. 1995) (additional citation omitted)). To satisfy the subjective test, the inmate must show that "the defendant official acted with a sufficiently culpable state of mind . . . such as deliberate indifference to [the inmate's] health or safety." Id. (internal quotation marks and citation omitted); see Phelps, 308 F.3d at 185. "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280 (citation omitted).

### 1. Food Tampering/Contamination

In the context of Eighth Amendment protections, prisoners are to be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who

consume it." Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted).

Consequently, "[d]epriving an inmate of food or serving him contaminated food may

constitute a violation of the Eighth Amendment." Moncrieffe v. Witbeck, No. 97-CV-253

(NAM), 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000) (citing Robles, 725 F.2d at 15)

(additional citations omitted). With respect to the objective element "[i]n food tampering

claims[,] a plaintiff must allege that he suffered an actual injury, 'the mere allegation of

food tampering alone [] is insufficient to establish a claim under the Eighth

Amendment.'" Calvin v. Schmitt, No. 15-CV-6584 (NSR), 2017 WL 4280683, at *5

(S.D.N.Y. July 7, 2017) (alteration in original) (quoting Harris v. Ashlaw, No. 9:07-CV-

0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007)).

Turning first to the objective element, plaintiff contends that Lafountain "plac[ed]

spit[,] bodily fluids," and "pubic[-]like hair fibers" in his bread, which he delivered to

plaintiff unwrapped, "exposing plaintiffs [sic] bread to contamination with dangerous

bacteria[]" and resulting in plaintiff becoming "exposed to [tuberculosis] after eating and

digesting such hazardous germs/bacteria." Compl. at 69 ¶ 222, 70 ¶ 227. The

undisputed medical evidence, corroborated by plaintiff's unequivocal deposition

testimony, establishes that plaintiff tested positive for exposure to tuberculosis in April

2016 while he was housed at Southport. See Dkt. No. 78-2 at 3, 4, 6; Dkt. No. 72-5 at

248-249, 250-251. It has been held that a "positive . . . test for exposure to the

tuberculosis bacteria is evidence in support of the [objective] element" of an Eighth

Amendment claim. Odom v. Sielaff, No. CIV. A. NO. CV-920571 (DGT), 1995 WL

625786, at *3 (E.D.N.Y. Oct. 12, 1995). Therefore, contrary to defendants' contention,

plaintiff has established, based upon the uncontroverted medical evidence

demonstrating that he tested positive for exposure to tuberculosis, that he suffered a sufficiently serious medical condition.  See id.

However, as defendants correctly argue, aside from plaintiff's self-serving allegations that his tuberculosis exposure was due to Lafountain's tampering with his bread, nothing in record before the Court suggests that his exposure was caused by the food Lafountain served him at Clinton.  See Dkt. No. 72-2 at 16-17.  Courts in this Circuit have made clear that general allegations of the purported health effects of allegedly contaminated food which are unsupported by medical evidence are insufficient to establish the objective element of an Eighth Amendment food tampering claim and will not survive a motion for summary judgment.  See Abreu v. Farley, No. 6:11-CV-06251 (EAW), 2019 WL 1230778, at *8 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment and dismissing an inmate's Eighth Amendment food tampering claim, where "the injuries that allegedly resulted from [the p]laintiff's ingestion of the food . . . [we]re not borne out by the medical evidence"); Stokes v. Goord, 9:03-CV-1402, 2007 WL 995624 (LEK), at *4 (N.D.N.Y. Mar. 30, 2007) ("[A]lthough Stokes makes general allegations regarding the health effects he suffered because of the alleged contaminated and inadequate food, there is nothing in his medical records to indicate that he suffered any adverse health effects from the food served to him by [the] defendants."); see also Martinez v. Lape, No. 9:09-CV-0665 (TJM/RFT), 2011 WL 4527943, at *9 (N.D.N.Y. Mar. 28, 2011) ("Other than the unsupported broad assertion that he contracted H. pylori from the food or water at Coxsackie, [the p]laintiff fails to allege how the expired food and juice posed an immediate risk to his health, inflicted pain and suffering, or otherwise amounted to an extreme deprivation."), report and

recommendation adopted, No. 09-CV-665, 2011 WL 4528980 (N.D.N.Y. Sept. 28, 2011).  As urged by defendants, plaintiff's allegations that he suffered health effects as a result of the food Lafountain served to him are speculative and not borne out by the medical evidence; therefore, plaintiff has failed to establish the objective element of his Eighth Amendment food tampering claim.  See Abreu, 2019 WL 1230778, at *8; Stokes, 2007 WL 995624, at *4; Martinez, 2011 WL 4527943, at *9.

With respect to the subjective element, plaintiff contends that Lafountain exposed his bread to "hazardous germs/bacteria" with the "malicious intent to cause plaintiff physical injury."  Compl. at 68 ¶ 219, 70 ¶ 227.  Plaintiff's claim in this regard is wholly conclusory and is unsupported by facts establishing that Lafountain was "actually aware of a substantial risk that" plaintiff would be exposed to tuberculosis by delivering him unwrapped bread.  Salahuddin, 467 F.3d at 280.  Although, as plaintiff notes, Lafountain does not address plaintiff's food tampering allegations in his declaration in support of defendants' motion for summary judgment, see Dkt. No. 72-17 at 1-2, aside from plaintiff's self-serving allegations, defendants correctly argue that the complaint and documentary evidence are devoid of facts indicating that Lafountain tampered with or contaminated plaintiff's bread.  See Dkt. No. 78-1 at 8; Abreu, 2019 WL 1230778, at *9 ("While a Court must view the evidence in the light most favorable to the non-movant on a motion for summary judgment, '[v]ague assertions supported only by self-serving statements,' even if found 'in the nonmoving party's affidavit[,] are insufficient to defeat a properly supported summary judgment motion.'") (quoting Moe v. United States, 668 F. Supp. 2d 497, 502 (W.D.N.Y. 2009)).

21

Indeed, as defendants argue, plaintiff alleges only that Lafountain delivered him food while he was housed in SHU—which he acknowledged at his deposition was prepared and handled by other individuals in Clinton's kitchen area.  See Dkt. No. 72-5 at 207; see also Compl. at 67-69 ¶¶ 214-222; Dkt. No. 78-1 at 7.  Further, plaintiff concedes that he never witnessed Lafountain unwrap the bread or contaminate or tamper with it in any way and merely speculates that Lafountain "unwrap[ped]," spit, and placed hair in the bread "outside of his presence" simply because it arrived that way. Compl. at 68 ¶ 219; see Dkt. No. 78-1 at 7.  However, allegations that prison employees violated an inmate's Eighth Amendment rights by delivering contaminated food, without factual support demonstrating that the defendants contaminated or tampered with the food, are speculative and will not survive a motion for summary judgment.  See Stokes, 2007 WL 995624, at *4 (granting the defendants' motion for summary judgment and dismissing an inmate's Eighth Amendment food tampering claim where, "although [the inmate] contend[ed] that [the] defendants delivered him the food, he fail[ed] to allege that he saw any of them actually contaminate or tamper with his food").  As the record does not contain any factual support demonstrating that Lafountain tampered with or contaminated plaintiff's food, "[p]laintiff has failed to [establish] a tangible link between [Lafountain] and the [allegedly] contaminated food" and his exposure to tuberculosis. Calvin, 2017 WL 4280683, at *5; see also Odom, 1995 WL 625786, at *3 ("Exposure to harmful bacteria and viruses is an unfortunate consequence of prison life.").  Moreover, "even assuming that the food was contaminated by someone, it would be . . . speculative to conclude that [Lafountain] w[as] the culprit[] simply because [he] delivered plaintiff's food to him."  Livingston v. Goord, 225 F. Supp. 2d 321, 332

(W.D.N.Y. 2002), overruled on other grounds, Livingston v. Piskor, 153 F. App'x 769 (2d Cir. 2005) (summary order); see Stokes, 2007 WL 995624, at *4.  Thus, "[t]here is simply no way that a factfinder could reasonably conclude, upon this evidence, that plaintiff's food had been [tampered with or contaminated], and that [Lafountain was] the culprit[]."  Livingston, 225 F. Supp. 2d at 332-33.

In sum, defendants have met their burden of establishing that no genuine dispute of material fact exists with respect to plaintiff's Eighth Amendment food tampering claim.[8]  To the extent plaintiff's submission may be construed as an opposition to defendants' motion in this respect, he fails to raise any issue of material fact sufficient to defeat defendants' motion.  Accordingly, it is recommended that plaintiff's Eighth Amendment conditions of confinement claim against Lafountain regarding his food be dismissed.

## IV. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Partial Summary Judgment (Dkt. No. 72) be **GRANTED IN ITS ENTIRETY**; and it is further

---

[8]  To the extent that plaintiff argues that Lafountain violated a DOCCS food handling policy, it is well settled that "[f]ailure to follow a DOCCS Directive does not give rise to a § 1983 claim."  Alicea v. Maly, No. 9:12-CV-203 (MAD/TWD), 2015 WL 4326114, at *14 n.8 (N.D.N.Y. July 14, 2015); see Cabassa v. Gummerson, No. 9:01-CV-1039 (DNH/GHL), 2008 WL 4416411, at *6 n.24 (N.D.N.Y. Sept. 24, 2008) (concluding that violation of a DOCCS Directive does not give the plaintiff a claim under 42 U.S.C. § 1983); see also Ahlers v. Nowicki, No. 9:12-CV-0539 (DNH/RFT), 2014 WL 1056935, at *4 (N.D.N.Y. Mar.18, 2014) ("[C]laims involving the improper adherence to proprietary facility policies are incognizable under § 1983; only rights secured by the Constitution and federal law are actionable under § 1983.").

**RECOMMENDED**, that plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. No. 78) be **DENIED IN ITS ENTIRETY** and the following of plaintiff's claims be **DISMISSED WITH PREJUDICE**:

(1) First Amendment retaliation claims against Officers Cymbrak, Guynup, Lafountain, Lagree, Mahoney, Mussen, Perry, and Wilcox insofar as they are based on the October 28, 2015 alleged use of excessive force;

(2) All claims against Annucci, Bellamy, Effman, Loren, Simpson, and Leahy Scott;

(3) Eighth Amendment excessive force claim against officers Mahoney and Lafountain; and

(4) Eighth Amendment conditions of confinement claim against Lafountain; and it is further

**RECOMMENDED**, that the action is terminated as to Annucci, Bellamy, Effman, Loren, Simpson, and Leahy Scott; and it is further

**ORDERED**, that the Clerk of the Court revise the docket to reflect the correct spelling of Karen Bellamy's name, and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P.

6(a), 6(e), 72.[9]

       Dated: December 16, 2019
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[9] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).